THE STATE, CHARLES H. McCHESNEY, PROSECUTOR, v. THE INHABITANTS OF THE CITY OF TRENTON.

The chief of police of the city of Trenton, as a member of the police department, is entitled to hold his office during good behavior, and can be removed only for causes specified in the act of February 23d, 1886.

On *certiorari* to remove an ordinance of the common council of the city of Trenton.

Argued at November Term, 1887, before Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiff, *G. D. W. Vroom.*

For the defendants, *Wm. M. Lanning.*

The opinion of the court was delivered by

VAN SYCKEL, J. This controversy involves the construction of the seventeenth section of the charter of the city of Trenton (*Pamph. L.* 1874, *p.* 339), which is as follows:

"That the common council, at the regular meeting on the third Monday in April, or as soon thereafter as circumstances will permit, shall, by the votes of a majority of all its members, appoint a city clerk, one member of the board of city assessors, a city treasurer, a city solicitor, a city marshal, a city surveyor, an overseer of the poor, a street commissioner, a sealer of weights and measures, keepers of the public pounds,

two police justices, and shall at the same time elect by ballot two persons to act as city physicians; should any ballot contain the name of more than one person for city physician, such ballot shall not be counted; the two persons receiving the highest number of votes shall be declared elected; and shall, from time to time, appoint such other subordinate officers as the common council shall deem necessary for the ordering and governing of the city and the execution of the powers and duties conferred and imposed upon the corporation by this act; the officers above named shall hold their offices for one year, unless sooner removed, and until their successors shall be appointed and qualified; the police justices shall be elected by ballot; should any ballot contain the name of more than one person for police justice, such ballot shall not be counted; the two persons receiving the highest number of votes shall be declared elected."

Considering this section by itself, it is doubtful whether the language, "the officers above named shall hold their offices for one year," applies to the "subordinate officers" mentioned in said section.

If it is competent, in the interpretation of these words, to assume that the draftsman of the charter of 1874 had before him the seventeenth section of the previous charter of 1866 (*Pamph. L., p.* 370), and that he used the word "named" in the same sense in which it is used in that section, it appears to us that any reasonable doubt as to its import is removed. The seventeenth section of the charter of 1866 is as follows: "The common council, by a majority of the whole number of members, shall appoint annually a city clerk, a city surveyor, a clerk of the market, a city marshal, a city solicitor, a street commissioner, a sealer of weights and measures, and two police justices, and such other subordinate officers not herein named as they shall deem necessary for the better ordering and governing the said city and carrying into effect the powers and duties conferred and imposed upon the said common council by this act."

The words "such other subordinate officers not herein

named" evidently in this section mean not particularly speci-
fied by a name to distinguish them from each other.   Con-
ceding, therefore, that this clear meaning of the seventeenth
section of the charter of 1866 was in the mind of the framer
of the seventeenth section of the charter of 1874, it is quite
clear that he intended by the words in the latter section, "the
officers above named shall hold their offices for one year," to
include only those officers particularly specified by name in
the preceding part of the section, and to exclude "other sub-
ordinate officers."   The language is not "that all the forego-
ing officers shall hold their offices for one year;" the words
"officers above named" are not so comprehensive.

If this interpretation should not prevail, for the reasons
given in *Cleary* v. *Trenton*, 21 *Vroom* 331, the common council
had the power, under the twenty-fifth section of the charter of
1874, to appoint the police force to hold their offices during
good behavior.

In view of this construction of the city charter, the power
of the common council to pass the ordinances which have been
certified into this court must be adjudged.   The question is
whether the common council has proceeded, in its attempt to
remove the relator from his office, in violation of the act of
February 23d, 1886, which provides "that no person shall be
removed from office or employment in the police department
of any city, or from the police force of any city, for political
reasons or for any other cause than incapacity, misconduct,
non-residence or disobedience of just rules and regulations
established or which may be established for the police force or
police department of such city."

By an ordinance passed May 1st, 1874, the common coun-
cil of the city of Trenton ordained that the police department
of the city of Trenton should consist of the marshal, who shall
be chief of police, two aids to the marshal, and fourteen po-
licemen.   On the 6th of April, 1886, a further ordinance was
passed that the police department should consist of the marshal,
chief of police, two lieutenants, two sergeants and twenty-five
patrolmen; that the chief of police should have all the power

:and perform all the duties theretofore required of the marshal, :and that the marshal should receive as compensation for his ·services the sum of $50 per annum, and the chief of police, for the faithful performance of his duties, the sum of $950 per annum.

At a meeting of the council held April 15th, 1886, the relator, who was then in office as marshal, was duly elected chief of police.

A further supplement to the said ordinance was passed .March·30th, 1887, as follows:

·" *The Inhabitants of the City of Trenton do ordain:*

"·Section 1. That the chief of police, lieutenants, sergeants, :and patrolmen elected under and by virtue of the provisions of the ordinance to which this is a supplement, and the several :supplements thereto, and now in office, and all who may be here-.after elected thereto, shall severally hold their respective offices .and continue in their respective employment as such munici-.pal officers and employees during good behavior, efficiency and .residence in the city of Trenton.

" Section 2. That all ordinances and parts of ordinances in-·consistent with the provisions of this ordinance be and the .same are hereby repealed."

The ordinance of April 6th, 1886, providing for the ap-·pointment of a chief of police, and making the office of mar-.shal a nominal one, did not fix the term of the office of chief ·of police or that of policemen. Its effect was to bring these ·offices within the operation of the act of February 23d, 1886. If there is any doubt about this, the doubt is wholly removed ·by the ordinance of March 30th, 1887. By force of these or-·dinances the relator is within the protection of the act of .February, 1886.

On the 3d of May, 1887, the common council passed a fur-·ther ordinance as follows:

·" *The Inhabitants of the City of Trenton do ordain:*

" Section 1. That the annual salary of the city marshal shall

hereafter be the sum of one thousand dollars, payable in equal monthly payments by orders drawn on the city treasurer; that the office of chief of police, as created by the ordinance entitled 'A further supplement to an ordinance to establish, regulate and control a day and night police,' passed May 1st, 1874, which supplement was passed April 6th, 1886, be and the same is hereby abolished, and that the powers vested in and duties required of the said city marshal shall hereafter be the same as prescribed in the ordinance to which this is a supplement.

"Section 2. That all ordinances and parts of ordinances inconsistent with the provisions of this ordinance be and the same are hereby repealed, and that this ordinance shall take effect immediately."

And on the 17th of May, 1887, a further supplement, as follows:

" *The Inhabitants of the City of Trenton do ordain :*

"Section 1. That the ordinance entitled 'A further supplement to an ordinance to establish, regulate and control a day and night police,' passed May 1st, 1874, which supplement was passed March 30th, 1887, be and the same is hereby repealed."

These ordinances repeal the ordinance of March 30th, 1887, providing that the chief of police shall hold during good behavior; they abolish the office of chief of police created by the ordinance of April 6th, 1886, and restore the office of marshal to the *status* it had under the ordinance of May 1st, 1874.

Conceding that the common council may increase or decrease the police force when the public good requires it, and that it may abolish the office of chief of police when there is, in its judgment, no need for the services of such an officer, must the ordinances of May 3d, 1887, and May 17th, 1887, be regarded as an attempt to evade and contravene the act of February 23d, 1886?

Looking at everything which is presented to the court in the proceeding certified, there is nothing to indicate that there was no longer a necessity for the performance of those duties which devolved upon the chief of police. On the contrary, the effect of the ordinance last mentioned is to impose upon the marshal all the duties which pertained to the office of chief of police, and to vest in him the superintendence and control of the police department. It nominally abolishes the office of the chief of police, but in fact confers the office with all its emoluments upon the marshal. It is the same office under a new name.

Before the passage of this ordinance the marshal received an annual salary of $50, and the chief of police an annual salary of $950. By the ordinance the salary of the marshal is made $1000.

The chief of police is, in virtue of the municipal legislation had in conformity with the power bestowed upon common council, a member of the police department of the city, appointed to hold his office during good behavior, and is entitled to the protection of the act of 1886. The act cannot be successfully evaded by merely changing the name of the office.

The ordinances complained of were manifestly intended to effect the removal of the relator without cause. The term of the office of marshal is restricted by the city charter to one year, and of that office the relator could be legally deprived at the expiration of the term for which he was appointed. The office of chief of police he holds by a more stable tenure.

The ordinances of May 3d and May 17th, 1887, are illegal and should be set aside.