BOARD OF FIRE COMMISSIONERS OF THE CITY OF NEW-ARK, PLAINTIFF IN ERROR, v. HENRY A. LYON, DEFENDANT IN ERROR.

BOARD OF FIRE COMMISSIONERS OF THE CITY OF NEW-ARK, PLAINTIFF IN ERROR, v. ALEXANDER H. JOHN-STON, DEFENDANT IN ERROR.

1. Under the act of May 2d, 1885 (*Pamph. L.*, p. 326), entitled "An act to remove the fire department in the cities of this state from political control," the position or office of "call members," in the fire depart-ment of Newark, may be vacated or abolished.
2. Such action is not within the act of March 24th, 1885, prohibiting the removal from office for political reasons, &c.; nor of the act of 1888 (*Pamph. L.*, p. 135), in regard to honorably discharged Union soldiers.

---

On error to the Supreme Court.    For opinion of Supreme Court, see 24 *Vroom* 92.

For the plaintiff in error, *Joseph Coult.*

For the defendant in error, *Joseph A. Beecher.*

The opinion of the court was delivered by

SCUDDER, J.    The facts in these cases are fully stated in the opinion of the Supreme Court, and the several statutes which govern them are therein set forth, and carefully expounded.    There is but one point on which the judgment

is disputed, and that is all that we shall consider. The pros-ecutors were both members of the fire department of the city of Newark, and were designated "call members." Both were dismissed by a notice dated May 23d, 1889, in consequence of the abolition of the call system, and the introduction of the full paid fire department, by order of the fire commission-ers. This was the result of a resolution passed May 21st, 1889, to re-organize the fire department of the city of New-ark, under the act of May 2d, 1885 (*Pamph. L.*, *p.* 326, *Rev. Sup.*, *p.* 517), entitled "An act to remove the fire and police department in the cities of this state from political control." By this statute there was created and established in each of the cities of this state, which shall accept the provisions of this act, a board of fire commissioners and a board of police commissioners, to whom, respectively, shall be entrusted the government, control and management of the fire and police department therein, and the direction and control of all public, fire and police matters, respectively, subject to the inspection and supervision of the common council of such city as there-inafter provided (section 1).

This is the general authority under which these commis-sioners have acted, together with more specific powers granted in succeeding sections of the act for the employment and appointment of firemen, and other persons necessary for the work of the department.

Their power to remove these prosecutors is denied, because of the protection given to them by the act of March 24th, 1885. *Rev. Sup.*, *p.* 691. By section 1 it is enacted that no person shall be removed from office, or employment in the fire department of any such city (where there is a fire depart-ment), or from the fire department force of any such city, for political reasons, or for any other cause than incapacity, misconduct, non-residence or disobedience of just rules and regulations, established, or which may be established, for the fire department or force of such city, &c.

A similar statute relating to police departments in cities was held to be constitutional, in its provision relating to the

removal of officers, in the case of *New Brunswick* v. *Fitzger-ald*, 19 *Vroom* 456 ; *S. C.*, 18 *Id.* 479.

Johnston, one of these prosecutors, also claims exemption under the act in regard to honorably discharged Union soldiers (*Pamph. L.* 1888, *p.* 135), to which class he belongs. Such person, by the statute, shall hold his position in any city or county of this state during good behavior, and shall not be removed for political reasons. The purpose of these several statutes, when read together, is apparent. It is to protect deserving and useful men in the enjoyment of public positions or offices of profit, to which they have been chosen, during good behavior, and especially to guard them against removal for political reasons. They have been adjudged to be valid, and liberally enforced by our courts for the benefit of the persons therein named, when, in proper cases, they have invoked their protection. But there will be occasions of incidental removal from offices and positions where these statutes are inoperative. There must be changes made from time to time in the administration of public affairs which may result in discontinuing old methods and creating new offices, or positions requiring greater capacity, skill and experience, and more constant service. These may interfere with some already in existence, but if they are substantial and needful to promote the efficiency of a public department, not mere pretexts for removals from office, in violation of the provisions of these statutes, and fraudulent evasions of their beneficent purpose, they should not be hindered or stopped by the enforcement of laws which were not intended to obstruct, but rather to aid, the public service.

The prosecutors were "call men" in the fire department. Their position is thus defined in the state of the case. In addition to the officers and permanent members appointed by common council, there were attached to each company, or organization, certain "call members," who were generally members of a previous volunteer force, who responded to calls made for their services when alarms were made, and the company to which they were attached called out. They were

paid $150 per year for this service. By the resolution in controversy this call system was abolished, and the permanent system adopted, by which a smaller number of men, appointed by the commissioners, should give all their time and service to the fire department, for a larger compensation. It is not disputed that this was a reasonable and wise change to promote the efficiency of the department in this large city. The contention of the prosecutors is, that, in opposition to this resolution, they must be continued under the old call system, or promoted to the position of permanent members. But the former no longer exists, and in the latter they have no appointment. When the call system was abolished, all of its members went out with it, if the commissioners had the power to abolish it. It would seem strange that a city having a volunteer department, or a department part paid and part volunteer, or part permanent and part occasional in service, cannot abolish either, and substitute another more uniform, regular and compact organization, with greater efficiency for public security, without the consent of its displaced members. They cannot in such a case be tried and discharged for any of the causes named in the statute, for there is no incapacity, misconduct, non-residence or disobedience of orders that can be shown against them. The cause is not in them, but in the public advantage of the change. They must, therefore, remain in office, or be dealt with in some way satisfactory to themselves. But why should cities be obliged to retain a larger number of men in service when a select body of a smaller number will be sufficient, and do better service, when constantly on duty? This embarrassment was certainly not contemplated when these acts for the protection of deserving men against the designs of successful politicians, hurtful to the public as well as to the incumbents, were passed, and such construction should not be given to them. These statutes were not intended to give perpetuity to offices in this department, but for the protection of incumbents while the offices continued.

I have said that the prosecutors have no appointment as permanent members, though this is alleged.  The board of fire commissioners, when organized, passed the resolution, "that all officers, members and employes of the fire department, at the present time, be accepted as temporary employes of this commission."  This continuance was essential for the public security.  By the subsequent rules and regulations of the Newark fire department the " call men " were recognized as members of the fire department, as they had previously acted.  They were still, however, but " call men," distinct from permanent members under the rules adopted by the fire commissioners, and are within the terms of the subsequent resolution by which their office was abolished.  They were recognized as part of the working force of the fire department, but not as permanent firemen.

As to the power of the commissioners to make this change and abolish this position of " call men," when it was apparent that the efficiency of the service demanded it, there can hardly be a doubt.  To the board of fire commissioners of cities, the statute says, " shall be entrusted the government, control and management of the fire and police department therein, and the direction and control of all public fire matters," &c.   Its declared purpose by the title was " to remove the fire and police departments in the cities of this state from political control."  This was done by putting it in the charge of four commissioners, who should be equally divided, politically, instead of the common council.  They were not required to keep the fire department in the exact position in all its details as when they assumed the management.  The power of government, control and management of the fire department, subject to the inspection and supervision of the common council of the city, as in this act provided, is not so limited, and the construction which has been put upon it is too restricted.  Among the acts which the board are authorized to do, by section 7, it may " declare vacant any and all of the offices or positions therein or thereunder as to such board may appear best for the public interest in such department."  This cannot

be done for the purpose of appointing another to the vacated office unless it be for good cause shown against the incumbent, for this would be a removal within the prohibition of the statute; but a permanent vacancy may be declared when the public interest demands it. It is also said "they shall have power from time to time to make such by-laws, rules and regulations, for the government of such board, and for the conduct and management of the affairs of said board and the department under its control, as to the members of such board shall seem proper." While, therefore, it may be questionable whether this board, acting within the terms of this statute, could create an entirely new fire department, on which no opinion is expressed, it certainly can in its government, control and management of an existing department, vacate or abolish superfluous, expensive and antiquated offices, if done in good faith to promote the efficiency of the service, although it may displace some men whose positions are secured to them during good behavior. The tenure of office is qualified by the continuance of the office.

The prosecutor, Johnston, who is within the protection of the act in regard to honorably discharged Union soldiers, can also only hold his position so long as it exists.

The judgment setting aside the resolutions of the board of fire commissioners will be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, KNAPP, MAGIE, REED, SCUDDER, BROWN, CLEMENT, SMITH, WHITAKER. 11.