In the Matter of the Application of JAMES CUSACK, Appellant, *v.* THE BOARD OF EDUCATION OF THE CITY OF NEW YORK, Respondent.

*Principal of an evening school in the borough of Brooklyn — what reorganization by the board of education of the city of New York does not justify his removal — bad faith need not be shown by him — presumption as to competency to teach — remedy for incompetency — tenure of office under section 1101 of the revised New York charter — teachers appointed prior to chapter 466 of the Laws of 1901 covered by section 1101 — the evening schools are a part of the common school system — a statement of incompetency, when a conclusion of law.*

Prior to May, 1902, there were four evening high schools in the borough of Brooklyn, in each of which both boys and girls were taught. James Cusack, who was the principal of an elementary day school, was the principal of one of the evening high schools. The teachers in the evening [high schools were appointed for a specified period and Cusack's term expired at the close of the school year of 1901–1902. In May, 1902, the board of education of the city of New York reorganized the evening high schools so as to make two schools exclusively for boys and two schools exclusively for girls, one of each class in the former city of Brooklyn and one of each class in the former city of Williamsburgh. In June, 1902, before Cusack's term had expired, the board appointed male principals for the schools for boys and female principals for the schools for girls. Cusack was not among the principals so appointed, although three of such appointees had not previously held positions as principals of evening night schools.

Section 1101 of the revised Greater New York charter (Laws of 1901, chap. 466) provides that certificates of qualification, such as the one held by Cusack, "shall entitle the holders to appointment or promotion to any position to which

they were respectively eligible by the possession of such licenses or certificates." Section 1090 of that charter provides, "In case of the consolidation of schools or of the discontinuance of any school, principals and teachers of good standing, who thereby may be deprived of employment, shall be preferred in appointments to be made in any of the schools of the city."

Upon a motion by Cusack for an alternative writ of mandamus to compel his reinstatement to the position of principal of evening high school, it was

*Held*, that the position of principal of evening high school had not been abolished in good faith in the reorganization, and that, in this connection, it was not necessary for the relator to show any actual bad faith on the part of the board of education in its plan for reorganizing the evening high schools, but only to show that it had acted without warrant of law;

That, as the relator was holding the position of principal in one of the elementary schools of the city, where both boys and girls were taught, and no proceedings had been instituted, under section 1093 of the revised Greater New York charter, for his removal on the ground of inefficiency, it was a fair assumption that he was qualified to hold the position of principal of an evening high school either for boys or girls;

That a statement in the return of the board of education that the relator was not possessed of qualifications peculiarly fitting him to be placed in charge of a school for girls was a mere conclusion.

That, even if he was not qualified to fill the position of principal of an evening high school for girls, there were two evening high schools for boys in appointment to which the relator was entitled to a preference under the provisions of sections 1090 and 1101 of the revised Greater New York charter.

That the following clauses of section 1101 of the revised Greater New York charter, providing, "all principals * * * appointed by the board of education before this act takes effect (January 1, 1902) * * * shall continue to hold their respective positions and to be entitled to such compensation as is now provided or may hereafter be provided by the lawful authority, subject to change of title, to reassignment or to removal for cause, as may be provided by law, and subject to the right of the said board to abolish unnecessary positions," included not only such officials as had been appointed at the time the greater city was erected, but also those who were appointed prior to the time when the act of 1901 took effect;

That, under section 1069 of the revised Greater New York charter, the evening schools are as much a part of the common school system as the elementary schools.

APPEAL by the petitioner, James Cusack, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 30th day of October, 1902, denying the petitioner's application in the first instance for a peremptory, and thereafter, pending the hearing on such application, for an alternative, writ of mandamus.

*Conrad Saxe Keyes,* for the appellant.

*James McKeen* [ *Walter S. Brewster* with him on the brief], for the respondent.

GOODRICH, P. J.:

In 1887 the applicant was appointed principal of evening school No. 22 by the board of education of the city of Brooklyn, and continued as such until September 23, 1901, when he was transferred and made principal of evening high school No. 3. This position he held until the close of the school year, 1901–1902. He also holds the position of principal in day school No. 17. The majority, but not all, of the teachers in the evening schools are teachers in the day schools, and their services in the evening schools are separate and in addition to their services in the day schools. The appointment of teachers in the evening schools is for a specified time, but never beyond the school year.

Prior to July 1, 1902, there were four evening high schools in the borough of Brooklyn, one of which was known as Evening High School No. 3. In May the board of education of the city of New York, created by the Greater New York charter, claims to have reorganized the evening high schools of the borough of Brooklyn. The only change was to make two schools exclusively for men and two exclusively for women, one of each class in the former city of Brooklyn and one of each class in the former city of Williamsburgh. The return alleges that the position held by the applicant has been abolished in good faith and that no male person has since been appointed to the position heretofore held by the applicant or to perform the same duties. In June, 1902, the board appointed male principals for the schools for men and female principals for the schools for women, three of which appointees had not previously held positions as principals of evening high schools, thus omitting the applicant and in effect removing him from his position as principal of an evening high school in the borough of Brooklyn. He prayed for a peremptory writ• of mandamus, commanding his restoration as principal of an evening high school and his assignment to one of the present high schools.

The first point raised by the city is that the position of principal of evening high school was abolished in good faith in the reorgani-

zation of the plan of evening high schools of the borough. I think not; and in this connection it is to be noticed that it is not necessary for the applicant to show any actual bad faith on the part of the board in its plan for the reorganization of the evening high schools. It is only necessary to show that the board has acted without warrant of law. (*People ex rel. Shields* v. *Scannell*, 48 App. Div. 69.)

There were four evening high schools before May, 1902. The number has not been changed; nor was any one in particular abolished. These schools were mixed evening high schools for men and women together. The only change in the system is the segregation of the sexes. Each of such schools has a principal in name and in fact, and there is nothing in the return to show that the duties of such principals have been changed in any respect whatever, nor that any new qualifications are required of the principals, nor that the applicant is incompetent to teach women by reason of his sex. The return does allege that the applicant is not possessed of qualifications peculiarly fitting him to be placed in charge of a school for girls, but that is a mere conclusion, and if it is true, the revised charter (Laws of 1901 chap. 466), as we shall presently consider, provides means for his removal. Even if we accept it as true, the fact still remains that there are two male schools to either of which the applicant might have been designated without apparent injury to the public service. Section 1101 provides that the holding of certificates of qualification (such as the applicant holds) " shall entitle the holders to appointment or promotion to any position to which they were respectively eligible by the possession of such licenses or certificates." That he was eligible to the position in question is evident from the fact that he was holding it by appointment of the proper officials; and this being so, he was entitled to preferential appointment in one of the newly arranged evening high schools. Section 1090 provides that " In case of the consolidation of schools or of the discontinuance of any school, principals and teachers of good standing, who thereby may be deprived of employment, shall be preferred in appointments to be made in any of the schools of the city."

The applicant is now holding the position of principal in one of the elementary schools of the city. Provision is made in section 1093 for the removal of any principal or branch principal, among

other causes, for "neglect of duty or general inefficiency." No proceedings have been taken under this section. It is a fair assumption that if he is qualified for the position of principal in an elementary school where both boys and girls are taught, he is qualified to hold the position of principal of an evening high school either for boys or girls.

The city also claims that section 1101 of the revised charter of 1901 does not apply to the position held by the applicant. That section provides that "all principals * * * appointed by the board of education before this act takes effect (January 1, 1902) * * * shall continue to hold their respective positions and to be entitled to such compensation as is now provided or may hereafter be provided by the lawful authority, subject to change of title, to reassignment or to removal for cause, as may be provided by law, and subject to the right of the said board to abolish unnecessary positions." The argument of the respondent is that this section, which is an amendment of section 1117 of the first charter (Laws of 1897, chap. 378), was intended to apply to those who had been employed in the several school systems of the territory consolidated in Greater New York, and does not apply to those subsequently appointed or to any positions created after consolidation. That was doubtless one of the intentions of the original charter, but no such restricted meaning appears in the language of the section. Its terms are broad enough in language and in spirit to cover not only such officials as were in existence at the time of the consolidation, but those who were "appointed by the board of education before this act takes effect," that is, the act of 1901, which took effect January 1, 1902. At that time the applicant was holding the position of principal of Evening High School No. 3, and his term did not end until the close of the school year of 1901–2 before which time, that is, on June eighteenth, the new principals were appointed.

The board claims, with apparent seriousness, that the evening schools constitute no part of the common school system of the State, and so do not come within the provisions of any statute and have no relation to the provisions for common school education. So far as Greater New York is concerned, the answer is found in section 1069 of the revised charter, which confers upon the board the power "to

establish and conduct elementary schools, kindergartens, manual training schools, trade schools, truant schools, evening schools and vacation schools." Whatever may be the provisions of the general school laws of this State, the evening school is just as much a part of the common school system in Greater New York as is an elementary school. The two classes of schools are grouped together with others and referred to in the same paragraph. The board derives no more power in relation to the one than it does in relation to the other.

The order should be reversed and a peremptory writ granted for the reinstatement of the applicant.

WOODWARD, HIRSCHBERG and JENKS, JJ., concurred ; BARTLETT, J., concurred in result.

Order reversed, with ten dollars costs and disbursements, and peremptory writ of mandamus granted for the reinstatement of the applicant.