(67 Misc. Rep. 460.)

PEOPLE ex rel. WOODWARD v. DRAPER, Com'r of Education.

(Supreme Court, Special Term, Albany County. May, 1910.)

1. CONSTITUTIONAL LAW (§ 277*)—DUE PROCESS OF LAW—"PROPERTY."

The office of school commissioner is not "property" in the sense that removal therefrom without a hearing is a taking of property without due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 949; Dec. Dig. § 277.*

For other definitions, see Words and Phrases, vol. 6, pp. 5693–5728; vol. 8, pp. 7768–7770.]

2. OFFICERS (§ 72*)—REMOVAL—NECESSITY OF HEARING.

The Legislature has the right to authorize an officer or board to remove an appointee or elective officer without notice or hearing.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 102; Dec. Dig. § 72.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. SCHOOLS AND SCHOOL DISTRICTS (§ 53*)—SCHOOL COMMISSIONERS—GOVERN-
   MENT.
   School commissioners, though elected by the people of their districts,
   are not local officers of the municipalities from which they are elected,
   but are a part of the state system, subject to the control of the com-
   missioner of education; their salaries being paid by the state.
   [Ed. Note.—For other cases, see Schools and School Districts, Cent.
   Dig. §§ 127–135; Dec. Dig. § 53.*]

4. SCHOOLS AND SCHOOL DISTRICTS (§ 53*)—SCHOOL COMMISSIONERS—RE-
   MOVAL.
   The power given by the Educational Law (Consol. Laws, c. 16) § 338,
   to the commissioner of education to remove a school commissioner for
   neglect of duty, may be exercised without notice or an opportunity to
   the commissioner to defend.
   [Ed. Note.—For other cases, see Schools and School Districts, Cent.
   Dig. §§ 127–135; Dec. Dig. § 53.*]

5. SCHOOLS AND SCHOOL DISTRICTS (§ 53*)—SCHOOL COMMISSIONERS—REMOVAL
   FROM OFFICE—EVIDENCE.
   In determining whether a school commissioner has been guilty of will-
   ful violation or neglect of duty within Educational Law (Consol. Laws,
   c. 16) § 338, the commissioner of education may consider official records
   on file in the educational department of the state.
   [Ed. Note.—For other cases, see Schools and School Districts, Cent.
   Dig. §§ 127–135; Dec. Dig. § 53.*]

Application by the State, on the relation of William H. Woodward, for a writ of certiorari to review the action of Andrew S. Draper, Commissioner of Education for the State. Motion to correct return to writ denied.

The relator, William H. Woodward, school commissioner of the Third commissioner district of Albany county, was duly elected at an election held in the fall of 1908 for the term of three years beginning January 1, 1909. On or about November 20, 1909, the relator was served with an order to show cause why he should not be removed from his office, which order was under the hand and seal of the respondent, commissioner of education of the state of New York, and returnable at his office on the 30th day of November, 1909. On that day the relator appeared before the commissioner, was not sworn, was not attended by counsel, and it is claimed was given an opportunity to explain why he had failed to perform his duties as required by law and the regulations of the department of education. The commissioner thereafter decided that it had been proved to his satisfaction that the relator had been guilty of neglect of duty under the education law, and a willful violation of orders and regulations of the department, and under date of December 1, 1909, in claimed pursuance of section 338 of the education law (Consol. Laws, c. 16), removed the relator from his office.

The relator, under date of December 27, 1909, obtained an order from Mr. Justice Betts for a writ of certiorari to review the action of the commissioner. A writ was thereupon duly issued on the same day, and the commissioner made his return thereto, which was duly filed with the county clerk of Albany county February 7, 1910.

By the terms of the writ the commissioner was required, among other things, to "certify and return to us, at the office of the clerk of the county of Albany, all and singular your proceedings, decisions, orders and actions in removing said petitioner from office as school commissioner of Third commissioner district of the county of Albany, and all things pertaining and relating thereto," etc. Upon the filing of the return pursuant to the said writ, relator made this motion to strike from it the paragraphs first to thirteenth and various exhibits specifically described, and paragraph twenty-third of the said return. Paragraphs first to thirteenth, referred to, contain a statement of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the powers and duties of the relator and respondent, the provisions of law relating to those powers and duties and those portions thereof which the commissioner claimed had been violated by the relator, and alleged willful violations of duty of the school commissioner, claimed by the commissioner to have existed, with especial reference to records in the department of education relating thereto, which records were stated to be within the official knowledge of the respondent. The exhibits objected to were referred to in the return as records in the commissioner's office considered by the respondent on relator's removal.

Paragraph twenty-third of the return contained a statement that the commissioner of education had pursuant to the authority conferred upon him established the following as one of the rules to regulate the practice on appeals: "The commissioner of education will, in his discretion in the determination of an appeal, take into consideration any official records on file in the educational department relating to the issues involved in such appeal." All of the aforesaid letters, reports, records, and all other matters set up in the return were returned as the commissioner's "proceedings, decisions, orders and actions in removing said petitioner from office," and the particular matters objected to are now claimed by the commissioner of education to be "things pertaining and relating thereto."

Ainsworth & Sullivan, for relator.

Frank B. Gilbert (Edward R. O'Malley, Atty. Gen., of counsel), for respondent.

Le BOEUF, J. There may be some question in this case as to the necessity for setting up the statutory provisions in the return to the writ; but, inasmuch as they set forth the powers and duties of both parties and the particular provisions of law which were claimed to have been violated, I cannot see how the relator is prejudiced by having those provisions included in the return in a form calculated to direct the court's attention immediately to the later matter set up in the writ with which they are connected.

The remaining items objected to are more seriously contested as being largely matters which were not brought to the attention of the relator when he appeared before the commissioner of education, and on the ground that they properly constituted no part of the proceedings upon which the relator was removed. The commissioner of education answers this by insisting that the letters and records were part of the records of his office, and that, whether they and the other matters stated in the items objected to were or were not called to the attention of the relator at the time of the hearing, they were considered by him in proving to his satisfaction that the relator had been guilty of willful neglect of duty. It would therefore clearly appear that they come within the requirement of the writ as "things pertaining and relating" to the commissioner's action in removing the relator, entirely apart from the question whether the respondent was justified in considering them. To this the relator replies that, if they do come within the terms of the writ, they are absolutely immaterial.

It is contended that the respondent had no right to consider anything else than those things which were brought to the attention of the relator at the time of the hearing, and were taken as part of the stenographic minutes in that proceeding; and not only are they immaterial, but these matters will greatly prejudice the relator before the Appellate Division. Reference is made to various authorities

which hold that immaterial matters may not be included in the return to a writ of certiorari, including People ex rel. Joline v. Willcox, 134 App. Div. 563, 119 N. Y. Supp. 641. This court will not presume, regardless of these authorities, to take from the Appellate Division the opportunity of determining directly on certiorari whether or not these matters were irrelevant or improperly considered. If deemed immaterial they may be disregarded by that court. These matters are not, however, in the judgment of this court, immaterial and irrelevant; and, as the proposition was exhaustively and ably argued by the attorneys for the parties, it is but fair that the motion be decided upon the merits, that being the issue really tendered.

Two propositions which bear upon the merits seem to be conclusively settled by the authorities against the relator.

First. The office which he held as school commissioner was not property in the sense that his removal therefrom without any hearing was a taking without due process of law. Nichols v. MacLean, 101 N. Y. 526, 533, 5 N. E. 347, 54 Am. Rep. 730; People v. Devlin, 33 N. Y. 269, 88 Am. Dec. 377; Conner v. Mayor, 2 Sandf. 355; affirmed 5 N. Y. 285.

Second. The Legislature has the power to authorize an officer or board to remove an appointive or elective officer without notice or hearing. People ex rel. Gere v. Whitlock, 92 N. Y. 191; Donahue v. Will County, 100 Ill. 94; Eckloff v. District of Columbia, 135 U. S. 240, 10 Sup. Ct. 752, 34 L. Ed. 120; People v. Higgins, 15 Ill. 110; State v. Prince, 45 Wis. 610; State v. Doherty, 25 La. Ann. 119, 13 Am. Rep. 131; 25 Am. & Eng. Ency. of Law, 431, 433, citing Trimble v. People, 19 Colo. 189, 34 Pac. 981, 41 Am. St. Rep. 236; Lynch v. Case, 55 Kan. 367, 40 Pac. 666; Townsend v. Kurtz, 83 Md. 331, 34 Atl. 1123; Sweeney v. Stevens, 46 N. J. Law, 344.

These propositions being determined, the issue is narrowed to a construction of section 338 of the education law.

The state commissioner of education is the head of a great department, having under his supervision the schools of the state. The salary of the school commissioner is paid by the state. Education Law, § 306. Though a school commissioner, he is elected for a division of the state known as the school commissioner's district. School commissioners are required to report to the commissioner of education. Section 314. Although elected by the people of their districts, all their acts may be set aside or modified by the commissioner of education on appeal; and it is well said by the respondent's attorney that "their election by the people does not in any way render them less subject to the control of the commissioner of education."

The schools of the state are not local institutions, nor are the officers elected or appointed to administer them in the several districts local officers. Such officers are part of a state system, and are not agents of the municipalities from which they are elected or appointed. Gunnison v. Board of Education, 176 N. Y. 11, 68 N. E. 106. The department of education was at the time of the passage of the education law well known to the Legislature to be one of the most important departments, if not the most important, of the state intrusted to the supervision of a commission. There are nearly 11,000 school districts

in the state over which the commissioner of education exercises control, having upwards of 30,000 school officers. This was the condition of affairs for which the Legislature intended to legislate when it passed section 338 of the Education Law, which provides:

"Whenever it shall be proved to his satisfaction that any school commissioner or other school officer has been guilty of any willful violation or neglect of duty under this chapter, or any other act pertaining to common schools, or willfully disobeying any order or regulation of the commissioner of education, such commissioner may, by an order under his hand and seal, which order shall be recorded in his office, remove such school commissioner or other school officer from his office."

It is apparent that great power was accorded the commissioner of education by this statute.

The relator claims, however, that the words "proved to his satisfaction," coupled with the word "guilty," therein, evinces an intent on the part of the Legislature that each officer so removable is entitled to a trial upon notice, with opportunity to hear all of the evidence and explain the same.

As a general proposition, the relator's position is one which would recommend itself to the court, as it seems but fair, in ordinary cases, that a public officer should not be removed without notice, charges, a trial, and an opportunity of explanation. The court's duty is, however, to construe the statute in the light of the recognized legislative policy of the state; and even a comparative examination of the education law does not permit me to give it the construction claimed by the relator.

Section 338 of the education law was derived from the consolidated school law of 1894 (chapter 556, tit. 1, § 13), which, in turn, was the consolidated school act of 1864 (chapter 555, tit. 1, § 18). In this section it is noteworthy that nothing is stated therein as to notice or hearing. Under section 228 of the education law, it is provided that members of boards of education may be removed "for cause shown and after giving notice of the charge and opportunity of defense." The power of removal is here, as in section 338, vested in the commissioner of education. The section was found in the consolidated school law of 1894 (title 8, § 29), and the consolidated school law of 1864 (title 9, § 26). It is asserted, and it appears to be the case, that these sections have retained the same relative position in all subsequent school laws. As to members of boards of education having stated that they are removable for cause and after giving notice and opportunity of defense, the section further states that:

"Willful disobedience of any lawful requirement of the commissioner of education, or a want of due diligence in obeying such requirement, or willful violation or neglect of duty is cause for removal."

The cause for removal of a member of a board of education is substantially the same as the cause for the removal of a school commissioner or other officer. We have, therefore, on the one hand, the Legislature, at about the same time under the same conditions, explicitly providing for a trial in case of removal of members of boards of education; while, on the other hand, as to school commissioners and other school officers, such a provision is not added. It may be fairly

said, after an examination of these provisions, that the Legislature, having full knowledge of the condition of affairs that existed in the state of New York, intended in that class of cases that no notice or opportunity of defense should be given.

In People ex rel. Sims v. Board of Fire Commissioners, 73 N. Y. 437, the court applied this proposition in a case not as strong as the case at bar. There section 28 of the New York charter of 1873 (Laws 1873, c. 335), provided that:

"The heads of all departments * * * shall have the power to appoint and remove all chiefs of bureaus * * * as also all clerks, officers, employees and subordinates, in their respective departments, * * * but no regular clerk or head of a bureau shall be removed until he has been informed of the cause of the proposed removal, and has been allowed an opportunity of making an explanation."

It was also claimed that an employé not in the excepted class could not be removed without a hearing. To this the court said:

"But the statute, by distinguishing between these two classes of officials, and other 'clerks, officers, employés and subordinates' necessarily leaves those not thus named and expressly excepted from the operation of the general powers, subject to removal at the pleasure of the board. This follows from the familiar rule of interpretation of statutes, 'expressio unius est exclusio alterius.' The power to remove at pleasure is conferred in general terms, and but two classes of all the officers and employés are excepted from its operation, and given the benefit of a hearing, and subjected to a removal only for cause."

To similar effect, see People ex rel. Emerick v. Fire Commissioners, 86 N. Y. 149.

The relator relies especially on People ex rel. Peck v. Fire Commissioners, 106 N. Y. 67, 12 N. E. 641, arising under section 14 of title 13 of the charter of the city of Brooklyn (Laws 1873, c. 863). By that statute power was conferred upon the commissioners to remove members of the fire department "on conviction" of certain offenses therein specified. Importance is given by the relator to the use of the word "conviction" in that statute, and it is claimed that the words used in section 338 of the education law were practically identical in effect. It is noteworthy in that case that nowhere does the court lay any stress upon the word "conviction," nor expressly derive from it a legislative intent that notice of a hearing should be accorded the accused. The court in that case did say:

"By well established rules applicable to such cases, before there can be any conviction under this section, the member proceeded against is entitled to notice of the charge made against him, and to a hearing and trial.".

It is noteworthy, however, despite the general language, that the appellant's counsel in that case chiefly relied upon People ex rel. Munday v. Fire Commissioners of New York, 72 N. Y. 445, where the statute contained express provisions for notice and opportunity for explanation; and greatest stress was laid by the court upon the fact that the provision in another section of the same act which had given the power of summary removal had been repealed by the Legislature. The court as to this said:

"The omission from the section of the absolute power of removal is quite significant, and leaves no doubt as to the proper construction of section 14."

If that court had been called upon to construe this statute, containing as to one class of officers express provision for notice and hearing and omitting such a provision as to another, it may well be that it would have regarded such omission as "quite significant." In recent years the rule at common law has been disregarded as to the direct result of a legislative practice, which has grown up, of inserting a provision for notice and hearing when this has been intended.

The attorney for the respondent, with characteristic industry, has set forth in great detail upon his brief instances of general statutes where this legislative intent has been expressly indicated, too numerous to be here recited.

That the courts have been influenced by this practice is well stated in People ex rel. Fonda v. Morton, 148 N. Y. 156, 42 N. E. 540, where the court said:

"The practice of legislation in this state has been to insert a provision for notice and hearing when this has been intended. The acts cognate to the act of 1894, viz., chapter 119 of Laws of 1888, and chapter 577 of Laws of 1892, restricting the power of removal of Union soldiers or sailors holding official employment in cities and counties, contain a provision that removals shall not be made 'except for cause shown after a hearing had.' In view of the course of legislation and the scope of the act of 1894, we are of opinion that the Legislature intentionally omitted to insert a similar provision in the statute in question."

It is not too much to say that the Legislature assumed that the commissioner of education had other duties to perform besides sitting at formal trials of such of the 30,000 school officers removable by him against whom charges might be preferred.

In People ex rel. Clingan v. Draper, 63 Hun, 389, 18 N. Y. Supp. 282, the removal of a school trustee was sustained though no hearing had been accorded him, although upon relator's brief that was strongly urged as in violation of his rights. The court, under these authorities finds no difficulty in holding that the omission in section 338 of express provisions for notice and hearing contained in section 228 was intentional, and that the relator was not entitled as a matter of right to notice of, or a hearing. This being the case, the relator cannot object that the respondent had had his guilt proven to the satisfaction of the commissioner of education by reference to matters which were not made the subject of examination upon the hearing which was given him as a matter of favor, and not as a matter of right.

In the course of the management of his department, the commissioner of education was in close touch with the school commissioner. His acts and omissions became matters of record in that department. A court in determining a matter may take judicial notice of its own records. Machine Co. v. Goddard, 95 Fed. 664, 666, 37 C. C. A. 221; Matter of Osborne, 115 Fed. 1, 52 C. C. A. 595.

It has also been held that a court may examine its own records and minutes to see what has been done by it in other proceedings involving the same questions between parties in the pending action. Armstrong v. Colby, 47 Vt. 359; Pittel v. Mutual L. Ass'n Co., 86 Fed. 255, 30 C. C. A. 21. The test of the statute was that the relator should be proven guilty of the offenses or neglects in the statutes stated, to the satisfaction of the commissioner. This left to the commissioner

discretion as well in determining the matters which should be considered in reaching that determination. No mode of inquiry was prescribed by the statute, and the commissioner could exercise discretion in determining the method of inquiry. The school commissioner performed his duties under the direct personal supervision and direction of the department of which the commissioner was the head; and its very records contained a history, officially compiled, of his conduct of that office—indeed, contained his own admissions as to the manner in which he was carrying it on. It is difficult to understand what more satisfactory test than an examination of the records of this department could be employed to determine whether or not he has been guilty of a willful violation of the education law, or the regulations of the department which he was bound to obey. The respondent was justified in considering those records, apart entirely from the rule as to appeals objected to in paragraph twenty-third of the return, though that rule by its terms refers to the determination of an appeal, and the action of the commissioner in this case is not the determination of an appeal. The fact that the commissioner in this case assimilated the practice in the removal of the relator to the practice applicable to appeals does not in this case where notice and hearing were not required make his action in that regard the subject of proper criticism on this subject.

The respondent does not set up this rule in paragraph twenty-third of the return in any claim that, by any express provision of statute, it applies to this case. He simply sets it up to show that there is such a rule in his department, and that he has assimilated the practice in this case to the practice in appeal cases where by statute that rule was directly authorized. By so doing he seems clearly to have brought himself within what was said in People ex rel. Light v. Skinner, 159 N. Y. 162, 53 N. E. 806:

"He (the superintendent of public instruction, now commissioner of education) has power to regulate the procedure in all applications made to him, and may assimilate the practice in an application to remove trustees to that applicable to appeals from the official acts or decisions of school officers or district meetings. But this will not bring such an application within the scope of the statute, or exempt his decision in removing trustees of school districts elected by the people from review of the courts."

The application of the relator for correction of the return is denied, but without costs.

Application denied, without costs.