# CASES DETERMINED

BY THE

# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1916.

---

THE STATE ex inf. JOHN T. BARKER, Attorney-General, v. U. G. CRANDALL, Plaintiff in Error.

*In Banc, October 21, 1916.*

1. **POLICE COMMISSIONER:** Removal by Governor: Hearing. Under the Constitution requiring the Governor "to take care that the laws are faithfully executed," and the statute requiring him to appoint a board of police commissioners of the city of St. Joseph and declaring that "they shall, except as hereinafter provided, hold their offices for three years" and "for official misconduct any of said commissioners may be removed by the Governor, upon his being fully satisfied that the commissioner or commissioners charged is or are guilty of the alleged official misconduct," the Governor, without a formal charge and without the hearing of witnesses, may remove any such police commissioner, upon being fully satisfied of his official misconduct.

   *Held*, by BLAIR, J., concurring, that the statute in question expressly provides neither a hearing nor a removal at pleasure; but the rule, sometimes approved, that unless removal at pleasure is expressly provided notice and hearing will be implied, cannot be invoked in case there arises out of the statute, as here, a necessary implication that notice and hearing are not required. And as the statute empowers the Governor to remove in case he is "fully satisfied" of the commissioner's official misconduct, a notice or hearing is not required in order that the Governor may reach the conclusion that he is fully satisfied.

(44)                                    [269 Mo.

State ex inf. v. Crandall.

2. ———: **Statutory Construction.** If the statute expressly authorizes the Governor to remove a police officer at will, no question of his power to do so can arise. But where the statute does not, in terms or by necessary implication, grant discretionary power of removal, recourse must be had to all sources of statutory interpretation and construction that will enable the court to determine the exact nature of the power given in the particular case.

3. ———: ———: **Aided by other Provisions of Enabling Act.** The statute in express terms tells the Governor to remove a police commissioner of St. Joseph upon being fully satisfied of his official misconduct; and the fact that it was meant to authorize an exercise of the power upon the contingency stated and without a formal hearing, is emphasized by the other words of the same statute which permit the commissioners to remove members of the police force only "for cause after a hearing by the board."

4. ———: ———: **Conditional or Definite Term.** A statute which says that police commissioners "shall, except as hereinafter provided, hold their offices for three years," and then immediately proceeds to say that they may be removed by the Governor "upon his being fully satisfied" of their official misconduct, does not give a definite term to the appointee, but only a conditional term, whose duration depends on the exercise by the Governor of his power to remove.

Error to Buchanan Circuit Court.—*Hon. Nat M. Shelton,* Judge.

AFFIRMED.

*Lucien J. Eastin, William Reiter* and *Vinton Pike* for plaintiff in error.

(1) The title and term of office of the commissioner are provided by Sec. 8770, R. S. 1909. The term is three years. He receives a salary of $500 per annum. If not property in a precise sense it is a right that is protected against "the whimsical sport of chance, caprice or of intermeddlers, or of any form of illegal and unauthorized interference." State ex rel. v. Shepherd, 192 Mo. 509. (2) The office is vacated if the incumbent accepts any office of public trust or emolument, or receives, knowingly, a nomination to an elective office without declining it within twenty days after the nomination. And the commissioner may be removed for official misconduct

upon the Governor's being fully satisfied that the commissioner charged is guilty of the alleged official misconduct. Sec. 8770, R. S. 1909. (3) The power of removal is conditional. There is the fixed and definite term, and the appointing power was without authority to remove but for the final clause of section 8770, and that power could be exercised only on the condition that the Governor was fully satisfied after notice to and hearing of the accused commissioner, upon charges made by others or preferred by himself specifying acts whereof the official misconduct consisted. Mechem, Public Officers, 455; Throop, Public Officers, 364; Cooley, Const. Lim. (6 Ed.), 134; Baggs Case, 11 Coke, 99; High, Extra. Leg. Rem. (2 Ed.), 69; 1 Dillon, Mun. Corp. (4 Ed.), sec. 250 et seq.; 29 Cyc. 1409; 19 Am. & Eng. Ency. Law, 562f, 562g; State ex rel. v. Maroney, 191 Mo. 531; State v. St. Louis, 90 Mo. 19; Edward v. Kirkwood, 162 Mo. App. 581; State ex rel. v. Holtcamp, 245 Mo. 670; State ex rel. v. Moorhead, 256 Mo. 690; State ex rel. v. Walbridge, 119 Mo. 383; State ex rel. v. Pol. Com., 14 Mo. App. 32; State ex rel. v. Brown, 57 Mo. App. 204; Gracie v. St. Louis, 213 Mo. 395; Hallgren v. Campbell, 85 Mich. 285; Coleman v. Glenn, 103 Ga. 461; Dullum v. Willson, 53 Mich. 392; Ter'y v. Aschenfeller, 12 Pac. 897; Page v. Hardin, 8 B. Mon. 672; Lease v. Freeborn, 52 Kan. 750; Todd v. Dunlap, 99 Ky. 461; Jacques v. Little, 51 Kan. 300; Field v. Com., 32 Pa. St. 478; Briggs v. McBride, 5 L. R. A. (Ore.) 115; State ex rel. v. Hewitt, 16 L. R. A. (S. Dak.) 413; State ex rel. v. Smith, 16 L. R. A. (Neb.) 791. (4) The Governor has only such powers as are delegated to him by or in accordance with the Constitution. That instrument is a limitation upon the powers of the General Assembly, but is a grant of power to the other departments. Cooley, Const. Lim. (4 Ed.), 138, 139 and 77-8. (5) The supreme executive power is vested in the Governor (Art. 5, sec. 4), but it is not defined by the Constitution. Field v. People, 2 Scam. 80. His duties are to "take care that the laws are distributed and faithfully executed," and he is made a conservator of the peace.

*Id.*, sec. 6. If not otherwise provided by law, he shall fill vacancies temporarily (*Id.*, sec. 11), and with like exception shall commission all officers. *Id.*, sec. 23. The power to appoint or elect officers is primarily in the people, and consequently the Governor has only such power in that regard as is delegated to him. Riley v. State, 141 Pac. 264; In re Dec. of Judges, 69 Atl. 555.

*John T. Barker*, Attorney-General, and *Kenneth C. Sears* for defendant in error.

Under Sec. 8770, R. S. 1909, the Governor may remove a police commissioner without notice or trial when fully satisfied that such commissioner is or has been guilty of official misconduct. People v. Draper, 124 N. Y. Supp. 758; State ex rel. v. Burke, 8 Wash. 412; Hartell v. Boismenue, 229 Ill. 474; O'Dowd v. Boston, 149 Mass. 433; People ex rel. v. Whitlock, 92 N. Y. 191; State ex rel. v. Williams, 6 S. D. 119; Ayres v. Hatch, 175 Mass. 489; Shurtleff v. United States, 118 U. S. 311; State v. McGarry, 21 Wis. 502; People v. Welty, 75 Ill. App. 514; State ex rel. v. Grant, 14 Wyo. 41; State ex rel. v. Cheetham, 19 Wash. 330.

BOND, J.—I. On the —— day of August, 1916, the Lieutenant Governor, William R. Painter, being then vested with all the authority of the absent Governor, filed, in the office of the Secretary of State, an order removing U. G. Crandall from the office of Police Commissioner of the City of St. Joseph, setting forth in the order of removal, as his reason, that he was fully satisfied of the "official misconduct" of the deposed commissioner. Prior to this amotion the Lieutenant Governor telegraphed the commissioner to resign and received no response. Upon the failure of the commissioner to yield his office, the Attorney-General filed an information in the nature of a *quo warranto,* praying for a judgment of ouster against him.

The circuit court awarded the judgment prayed, from which the defendants sued out a writ of error to this court.

II. The Board of Police Commissioners is a statutory body lying in the appointment and removal of the Governor upon statutory conditions and for statutory reasons. It is charged with the preservation of peace, prevention of crime, the protection of the rights of person and property and the preservation of the health of the inhabitants of the cities of the State and to these ends is given full control of municipal policemen. [R. S. 1909, secs. 8772, 8773, 8774, 8778, 8779.] The tenure of office of the appointees to the board and the authority of the Governor to remove them is contained in certain portions of the statute providing for their qualification, to-wit: "And they shall, except as hereinafter provided, hold their offices for three years. . . . For official misconduct, any of said commissioners may be removed by the Governor of the State of Missouri, upon his being fully satisfied that the commissioner or commissioners charged is or are guilty of the alleged official misconduct."

*Governor's Power to Remove Police Commissioner.*

The only question presented by this writ of error is whether or not this statutory power of removal is one resting, to the extent given, in the discretion of the Governor, or is only exercisable after formal and specific charges, a trial thereof giving an opportunity for the hearing of witnesses and evidence, and a finding of the guilt or innocence of the accused. In brief, whether a police commissioner can be removed by the Governor with or without a trial, provided the Governor is fully satisfied in his own mind of the official misconduct of such officer.

It is of the very essence of the duties of the Governor of the State, as the personal representative and head of the executive department, to provide by fitting agents for the enforcement of its laws, the security of the persons of its citizens and the protection of their property. No greater responsibility could be imposed under a free form of government than is involved in the performance of these duties; for unless its laws are respected and

obeyed and the property and rights of its people pre-
served and upheld by its chief executive with all the
power given to him under its Constitution and laws, the
ends for which the State was organized by the people
would cease to exist. Realizing the high responsibility
and the correlative duties imposed thereby, the Legisla-
ture put in the hands of the Governor the power to main-
tain peace, enforce the law, prevent crime and protect
property by the appointment of boards of police com-
missioners, which are given power to create, control, reg-
ulate and remove the members of the police forces in the
large cities of the State. The statute clothing the Gov-
ernor with power to appoint this board of control, limits
the tenure of office of its members (in the city of St.
Joseph) to three years, *"except"* the Governor shall
remove any such appointee upon being fully satisfied
of his official misconduct. The Legislature in express
terms gave the Governor full power and made it his
duty, whenever he was fully satisfied of the "alleged
official misconduct" of any police commissioner, to re-
move him instantly from office, irrespective of his other-
wise possible term. The Legislature made a wholly dif-
ferent provision in dealing with the power of the police
commissioners to remove members of the police force
and permitted that to be exercised only "for cause after
a hearing by the board." [R. S. 1909, sec. 8773.] The
Legislature exhibited great wisdom in thus restricting
the power of amotion given to the subordinate board and
thereby guarding against abuse or misuse of its func-
tions, as might happen if the entire body of the police
were subject to arbitrary removal; and, on the other
hand, in freeing the hand of the Governor from any other
restraint in the management and direction of the board
of commissioners appointed by him, than his own judg-
ment of their official misconduct formed to "his full sat-
isfaction" by any method sufficient to enlighten a chief
executive anxious to discharge with promptness his duty
of enforcing the law through the men appointed by him
to direct and regulate the entire police force, whose duty

it is to suppress disorder, prevent crime and arrest offenders against the law. The supervisory control of the police force lodged in the Governor in virtue of his power to appoint and remove the board which directs the police, has its root in the organic law charging him "to take care that the laws are . . . faithfully executed," which is the first duty imposed upon him as the chief of the executive department of the State. [Constitution, art. 5, secs. 4, 6.] The importance of this task and the exigency of the public welfare that its faithful performance should not be delayed or hindered, must not be overlooked when considering the application to the exercise of the power of amotion by a Governor, of similar principles of law controlling lesser functionaries and boards engaged in the performance of duties not so vitally and immediately essential to the welfare of the State.

III. It needs only to be stated that where power is given to remove an appointive officer, it must be one which is exercisable either for cause, in which case notice and a reasonable opportunity to be heard are indispensable; or at will, that is, without any other formality than the exertion of discretionary power. And it necessarily follows that where the statute giving the power expressly authorizes the donee to act at will or discretion, no question can ever arise except as to the fact of the removal. But where the enabling act does not, in terms or by necessary implication grant discretionary power of removal, then recourse must be had to all the sources of statutory interpretation and construction which will render the meaning of the lawmakers clear and enable the court to determine the exact nature of the power given in the particular case.

Statutory Construction.

IV. In this State the rules governing the removal of appointive officers have been discussed by the appellate

courts in a series of cases in all of which, by the terms or implications of the statutory power given, **Express Power of Removal at Discretion.** the removal could only be for cause after notice and trial. One of the earliest is that of State ex rel. Denison v. City of St. Louis, 90 Mo. 19, and related to the removal of a police justice of the city of St. Louis. The charter of that city provided for the appointment of such officers by the mayor and with reference to their removal, provided, in so many words, that it should only be for cause. The court decided that this provision of the charter must be observed before a police justice could be removed. And in a succeeding case, State ex rel. v. Walbridge, 119 Mo. 383, this court refused to prohibit the mayor of the city of St. Louis from trying certain charges upon which it was sought to remove the president of the Board of Public Improvements, holding that the proceedings in question were in all respects reasonable and in conformity to the provisions of the charter, which specifically conferred the power to remove said officer for cause. [*Ibid.*, 393.]

The question was also presented to the St. Louis Court of Appeals upon an issue as to the validity of a removal of the superintendent of the poorhouse by the commissioners on charitable institutions of that city, under an authority conferred upon that body by the charter to remove any appointed officer of that institution by unanimous vote and in pursuance of an ordinance reaffirming such charter power and providing "that before any such removal shall be made, the person accused shall have a full, open and impartial hearing before the commissioners." [State ex rel. v. Brown, 57 Mo. App. 1. c. 203.] It was held that the power thus given to the commissioners was one to remove for cause. In discussing the interpretation of the grants of power to remove appointive officers, it was said in that case, in consonance with the preceding decisions in this Sate and elsewhere, that:

"It is fixity of tenure that destroys the power of removal at pleasure otherwise incident to the appointing power. The reason of this rule is the evident repugnance between the fixed term and the power of arbitrary

removal.    The effect of this rule is, that the right to hold during a fixed term can only be overcome by an express grant of power to remove at pleasure.    An inferential authority to remove at pleasure cannot be deduced, since the existence of 'a defined term, *ipso facto,* negatives such an inference, and implies a contrary presumption, i. e., that the incumbent shall hold to the end of his term, subject to removal for cause.''

The foregoing language was expressly adopted by this court in State ex rel. v. Maroney, 191 Mo. l. c. 548, and is only quoted again in order to set forth its logical converse, to-wit: that where the power to remove *is* given, expressly or by necessary implication, in the enabling act by words or terms denoting that it may be exercised in discretion, such power *to the extent thus given,* is *ex hypothesi* one which may be exercised whenever in the mind and judgment of the donee of the power, the fact or thing exists upon which his discretion is rested.

In the case at bar the statute in *express terms* tells the Governor to remove any commissioner *"upon his being fully satisfied"* of *"the alleged official misconduct"* of such commissioner.    It, therefore, falls within the exact terms of the proposition last stated and was necessarily included in the doctrine established when the foregoing decisions announced the rule of which that proposition is the logical converse.

V. Although the present case is the first time that this court has been required to pass upon a statute including within its terms language authorizing a removal by the Governor of one of his appointees whenever "fully satisfied" that a specified reason exists, or the power to remove at will for that reason, yet it was involved in all the cases in this State where the removals for cause were in judgment and which stated the exceptions to the doctrine of removal on that ground, and it has been directly adjudicated in other States and is the general consensus of the text-writers.    A few cases will be cited.

Removal for Cause.

In the case of People ex rel. v. Draper, 124 N. Y.
Supp. 758, the court was called upon to construe the
terms of a statute permitting the State Commissioner
of Education "whenever it shall be proved to his satis-
faction that any school commissioner or other school
officer has been guilty of any wilful violation or neglect
of duty," etc., to remove such official. The court held
that these terms necessarily implied a power of removal
in the State Commissioner of Education without "no-
tice" or "opportunity of defense," saying that it had
no difficulty in arriving at this legislative intent from a
consideration of the policy of that State and the further
fact that when dealing with the "Board of Education"
it was expressly provided in that State that its members
could only be removed "for cause shown after giving
notice of the charge and opportunity of defense."

The facts of the New York case are strikingly similar
to the facts of the instant case and the legislative action
in this State, which provides for a similar distinction,
as has been shown, when referred to the power of re-
moval of a member of the police force.

In the case of State ex rel. v. Burke, 8 Wash. 412, the
statute authorized the Governor to remove the members
of the Capitol Commission Board appointed until the
completion and acceptance of the State building, unless
sooner removed for cause by the Governor. It was said:
"It seems to be well settled that the Legislature in cre-
ating an office may limit the duration of the term in any
way it deems fit, if there is no constitutional provision
which would fix the term. It might make it determin-
able at the pleasure of the Governor or any other person.
In this case the power was entrusted to the Governor—
to act, it is true, upon certain grounds—yet his action
would be purely discretionary." It was accordingly
ruled the Governor might remove such officers without
charges, notice or a trial, and that his power in this
respect rendered an otherwise definite term an indefinite
one, and that the use of the words "for cause" did not
alter the nature of the power vested in the Governor,
since the act specified no particular misconduct or wrong-

doing, "nor any manner of removal other than it shall be by the Governor."

In the case of Hertel v. Boismenue, 229 Ill. 474, a statute almost identical in language with the one passed on by the Supreme Court of Washington was presented for review. The Illinois statute provided for the removal by the trustees of schools of a township treasurer appointed for a term of two years, for good and sufficient cause. The court held that this statutory provision was a mere generality uncoupled with any requirement of a formal charge or notice to the incumbent and that it might be exercised at will.

In the case of Ayers v. Hatch, 175 Mass. l. c. 491, provision was made in the city charter for the removal by the mayor of any officer appointed by him for such cause as the mayor might deem sufficient. In that case the mayor exercised the authority thus given to him without preferring charges or giving notice and holding a trial, stating as his only reason that the removal was for "the good of the service." The court held that this statute gave him a discretionary power for that reason to remove his appointee.

To the same effect are O'Dowd v. Boston, 149 Mass. l. c. 444; Attorney-General v. Brown, 1 Wis. 513; State v. McGarry, 21 Wis. 502; State ex rel. v. Grant, 14 Wyo. l. c. 57; People v. Welty, 75 Ill. App. l. c. 522; Trimble v. People, 19 Colo. l. c. 197; Wilcox v. People, 90 Ill. 186; State ex rel. Atty.-Genl. v. Doherty, 25 La. Ann. l. c. 120.

VI. It is unnecessary to apply the full strength of the doctrine announced in the foregoing persuasive rulings in other States. It is sufficient in order to determine the extent of the power of amotion vested in the Governor by the statutes under review, to ascertain the meaning of the language employed by applying to it the principles governing the removal of officers as declared by repeated decisions of this court and the most rigid rules elsewhere.

Fixed Term.

It will be seen at a glance that the statute (Sec. 8770, supra) does not give a definite term to the appointee, for

while it mentions three years as the possible limit of the appointment, yet it prefaces that statement with the words "except as hereinafter provided." By this conjunction of language, no definite term of office could arise except the provision thereinafter for ending it should not happen. This language evidently creates, by the greatest stretch of construction, only a conditional term of office whose existence depended wholly upon the exercise by the Governor of the power to remove "thereinafter" specified in the statute.

As has been seen the words granting this power vested it wholly in the Governor of this State with authority to exercise it "upon his being fully satisfied" of the "official misconduct" of any commissioner. It will be noted that this language provides no method of inquiry on the part of the Governor before arriving at the mental state of satisfaction as to the official misconduct upon the existence of which his power to order a removal arises under the statute, the sole requirement being a state of personal satisfaction on his part that a member of the Board of Police Commissioners has been guilty of some official misconduct. The statute wholly refrains from specifying or defining this ground of removal by any terms of specification or definition. It simply made it the duty of the Governor to satisfy himself that the party to be removed was guilty of some or any misbehavior or neglect of duty falling within the meaning of the general terms "official misconduct." These are terms of the broadest generality and comprehensiveness and were designed by the lawmakers to enable the Governor to conduct a correspondingly wide inquiry with authority to act the moment he was "fully satisfied" that any such appointee was guilty of any dereliction of official duty. Discretionary power thus invested in the Governor was uncontrolled except that it could only be exercised with reference to improper conduct on the part of a police commissioner in discharging his duty as the direct representative of the Chief Executive in the maintenance of peace, suppression of disorder and the prevention of crime. The Governor was not authorized to

remove such official for any other reason.  But once he was fully satisfied in his own mind of the existence of any act or omission falling within the broad language of the statute, his power to remove was subject to no restraint or limitation whatever.  Since the statute under review gives him full discretion to act by express authority therein contained, it does not fall within the purview of any of the rulings in this State or elsewhere denying the existence of the right to remove an officer at will where he was appointed for a definite term and where the statute authorizing his removal does not expressly or by necessary implication give that power. In the instant case, the acting Governor of this State filed in the office of the Secretary of State his order removing the respondent, expressly stating in such order the statutory reason for his action.  Both in reason and under the standards fixed by the decisions in this State, this action of the Governor was the performance of the duty imposed upon him by statute and he would have been unfaithful to his obligations to the people of this State if he had permitted a member of the Board of Police Commissioners to remain in office after being fully satisfied that he was abusing the trust imposed upon him by his appointment and by the law defining the duties of such office.

Respondent calls our attention to the ruling in the case or State ex rel. v. Maroney, supra.  There is nothing in the discussion of the law in that case at variance with the legal principles applied in the case under review; for it quotes and affirms the previous decisions of this court from which the conclusions reached in the present case are deduced.  In the Maroney case the court was considering the power of a Board of Election Commissioners to remove, for causes specified in the statute giving them that power, certain judges and clerks appointed to conduct an election.  Such officers were appointed for a term of ninety days and the Board of Commissioners given power to remove if any such appointee was *"found* not to possess the statutory qualifications or to be guilty of neglect of duty or of any

official misconduct.'' The term ''find'' is thus defined in law: ''To ascertain by judicial inquiry.'' [19 Cyc. 534.] Also: ''To determine and declare an issue of fact by its verdict or decision as a court or jury.'' [Webster's New Internat. Dict. word ''find'' v. i. *Law*.] According to this meaning of the term ''found,'' the statute in question which included that word, required the Board of Election Commissioners to make a semi-judicial inquiry, the necessary incidents of which were notice of charges and an opportunity to be heard before removing the judges and clerks appointed by it. So regarded, the statute in question by its terms limited the power to remove such officers for cause and the necessary incidents of such removals. It is clear, therefore, that the Maroney case is no authority for a similar ruling in the one at bar. Here, as has been shown, the power to remove was inserted in the statute and rests in the discretion of the Governor upon prescribed grounds, the existence of which he is allowed to determine to his own satisfaction. The return shows that the reasons given for his action were in strict conformity to the statutory power. He was thus possessed of jurisdiction to act, and his exercise of that jurisdiction was the discharge of an *executive* duty imposed on him as the Governor of the State, which is not reviewable by the courts. [State ex rel. v. Stone, 120 Mo. l. c. 433-4.]

Of the Maroney case, it is enough to say that while not amiss in its statements of legal principles, it goes to the verge of the law in applying them to the facts in judgment and can only be supported on the ground of the technical meaning given to the word ''find,'' of which the word ''found'' in the act is the past participle.

Our conclusion is that the judgment of the trial court should be and is affirmed.

*Faris, Walker* and *Blair, JJ.*, concur; *Woodson, C. J.*, not sitting; *Graves* and *Revelle, JJ.*, dissent.

BLAIR, J. (concurring).—In this case the statute expressly provides neither a hearing nor a removal at pleasure. It is sometimes said that unless removal at

pleasure is expressly provided, notice and hearing will be implied. This is well enough in case the right to remove is conditioned upon the actual existence of a disqualifying fact, official misconduct, guilt of some criminal offense, etc. On the other hand, in case there arises out of the statute a necessary implication that notice and hearing are not required, such notice and hearing cannot be required. What is necessarily implied is as much a part of the statute as what is expressly enacted. The statute here applicable empowers the Governor to remove in case he is "fully satisfied" of the commissioner's official misconduct. Had the statute provided merely that the Governor might remove "for official misconduct" it would have been well enough to imply notice and hearing before removal. Such a provision reasonably could be held to condition the right to remove upon the existence in fact of official misconduct on the part of the officer. When notice and hearing are implied, they must be implied for the purpose of trying the question whether the condition has arisen upon which the statute authorizes the removing power to act. Obviously, no other matter could be tried. Under the statute involved in this case the condition precedent to the exercise of the power to remove is that the Governor shall be "fully satisfied" that the commissioner has been guilty of official misconduct; not that the commissioner shall have been so guilty. It is plain nothing could be tried in a hearing under this statute save the question whether the Governor was "fully satisfied," and it is equally plain that question is not triable at all. The idea of a trial before the Governor to determine what the Governor thinks is a novel suggestion. The Governor might, conceivably, permit an official to be heard in order to reach a correct conclusion, but in this case the Governor has declared himself fully satisfied and has acted, and courts cannot add to the statute conditions the Legislature did not include.