STATE ex rel. HAMMOND et al. v. MAXFIELD et al.

No. 6432. Decided December 24, 1942. (132 P. 2d 660.)

*Mulliner, Prince & Mulliner*, of Salt Lake City, for plaintiffs.

*Grover A. Giles*, Atty. Gen., and *A. U. Miner* and *Calvin L. Rampton*, Asst. Attys. Gen., for defendants.

Rehearing denied March 1, 1943.

WOLFE, Justice.

Quo warranto to determine right to office as members of the State Road Commission. The facts, all admitted or stipulated, are as follows: By Section 36-2-1, R. S. U. 1933, there was constituted a State Road Commission consisting of three members appointed by the governor with the consent of the State Senate, each for a term of six years; the term of one member to expire December 1, 1933; the term of one to expire December 1, 1935, and the term of the third member to expire December 1, 1937. In 1933, Henry H. Blood, then the governor of the State of Utah, by and with the consent of the Senate, appointed Preston G. Peterson a member of the State Road Commission for a term of six years ending December 1, 1939; and at the expiration

of said term gave Peterson an interim appointment until the next meeting of the legislature, which was in 1941. In 1937, with the consent of the Senate, Governor Blood appointed as a member of the State Road Commission relator, George Abbott, for the unexpired term of Jake Parker, deceased, ending December 1, 1941; and relator W. D. Hammond for a six year term ending December 1, 1943. Relators qualified as required by law and commissions to each of them were duly issued. Relators thereupon became members of the State Road Commission for the terms indicated, and as such were officers of the State of Utah. On January 6, 1941, Herbert B. Maw succeeded Henry H. Blood as governor of the State of Utah for a four year term.

The first special session of the twenty-fourth legislature, convening in March 1941, enacted an act creating a new body or commission known as the Engineering Commission. Chapter 9. It also amended some sections of the statutes of Utah relative to the State Road Commission, enacted a new section numbered 3, chapter 13, which provided for the termination of the tenure in office of the persons then members of the State Road Commission in the following language:

"The terms of office of the members of the state road commission heretofore appointed shall terminate as and when the members of the engineering commission shall have been appointed and shall have qualified."

It also provided,

"The members of the engineering commission shall serve as the members of the state road commission." 36-2-1.

Defendants, Layton Maxfield and John S. Evans, Democrats, together with one Lester Blackner, a Republican, were with the consent of the Senate, duly appointed by Governor Herbert B. Maw as members of the newly created engineering commission, and qualified and assumed office as such.

On July 1, 1941, defendants and Lester Blackner, as members of the Engineering Commission, and as such claiming

to be ex officio the members of the State Road Commission, entered into and took possession of the offices of the latter, and ever since have occupied such offices, exercised the functions thereof and excluded relators therefrom.

For a period of time antedating by many years the appointment of any person involved in this action to office as a member of the State Road Commission, the statute has provided, and still does provide, that no more than two members of the Commission may belong to the same political party. The relators are both Democrats; the defendants are both Democrats. The term of Preston G. Peterson, Republican, had expired and the third appointee of Governor Maw to the Engineering Commission, Lester Blackner, is a Republican. He therefore was not joined as a party defendant, and no question is raised as to the failure to join him as a party. Relators, Hammond and Abbott, claiming to be entitled to the offices of State Road Commissioners, bring this action in quo warranto against defendants, Maxfield and Evans, to determine their right to office as members of the State Road Commission for the period from July 1, 1941.

The main question presented is as to whether the legislature, as a part of a plan of reorganization, could provide for the termination of the incumbency of the occupants of the offices of State Road Commissioners upon the appointment and qualification of the members of the newly created Engineering Commission for the purpose of permitting the members of such Engineering Commission to serve ex officio as members of the State Road Commission.

In the last analysis the power of the legislature to truncate the incumbency of one who has been appointed for a fixed term will be found to depend on the purpose for which it was done. On no other basis can the various concepts of legislative power under constitutional provisions such as ours be reconciled or fitted together with the power given the executive. We shall endeavor to illustrate this thesis by what follows:

We are all agreed—and we are almost universally supported by the cases—that an office created by the legislature may be abolished by it. Appointment of an officer gives rise to no contract that he may retain the office for the term appointed. No person has a vested right to an office. He has a right to the emoluments of office if he is entitled to hold the office. There is no contract that an appointee may remain in office. *Crozier* v. *Lyons*, 72 Iowa, 401, 34 N. W. 186, 189; *Eckerson* v. *Des Moines*, 137 Iowa 452, 115 N. W. 177, at page 189; Abbott on Municipal Corporation, Vol. 11, Sec. 479, p. 805 and cases cited in note; *Prince* v. *Skillin*, 71 Me. 361, 36 Am. Rep. 325; *In re Milford Township, Supervisors' Removal*, 291 Pa. 46, 139 A. 623; *Visor* v. *Waters*, 320 Pa. 406, 182 A. 241; *Commonwealth ex rel. Braughler* v. *Weir*, 165 Pa. 284, 30 A. 835; *People ex rel. Moloney* v. *Waring*, 7 App. Div. 204, 40 N. Y. S. 275; *Matter of Breckenridge*, 160 N. Y. 103, 54 N. E. 670; *Malloy* v. *City of Chicago*, 369 Ill. 97, 15 N. E. 2d 861; *Groves* v. *Board of Education of Chicago*, 367 Ill. 91, 10 N. E. 2d 403, 406; *People* v. *McCormick*, 261 Ill. 413, 103 N. E. 1053; *State* v. *Wright*, 211 Ind. 41, 5 N. E. 2d 504; *Williams* v. *City of New Bedford*, 303 Mass. 213, 21 N. E. 2d 265; 23 Am. & Eng. Ency., Second Edition, 404; 12 Corpus Juris, 1017; 16 C. J. S., Constitutional Law, § 314; 8 Cyc. 954; Mecham on Public Officers, Ch. VII, p. 295; Cooley on Constitutional Limitations, 7th Ed., p. 388.

But it must be a genuine abolition not something merely colorable or done under pretense. Dillon Municipal Corporations, Vol. II, Sec. 479, p. 806; *People ex rel. Vanderhoof* v. *Palmer*, 3 App. Div. 389, 38 N. Y. S. 651; *People ex rel. Lazarus* v. *Coleman*, 99 App. Div. 88, 91 N. Y. S. 432; *Williams* v. *City of New Bedford*, 303 Mass. 213, 21 N. E. 2d 265 and cases cited therein. *Cf. Evans* v. *Freeholders of Hudson County*, 53 N. J. L. 585, 22 A. 56; *McChesney* v. *Trenton*, 50 N. J. L. 338, 14 A. 578; *Hunziker* v. *Kent*, 111 N. J. L. 565, 168 A. 825, 826.

If it abolishes one office and puts in its place another by the same or a different name but with substantially the same duties, it will be considered a device to unseat the incumbents. *Cusack* v. *Board of Education,* 78 ■ App. Div. 470, 79 N. Y. S. 803, (reversed but not on this principle, 174 N. Y. 136, 137, 66 N. E. 677) ; *State ex rel. Birdsey* v. *Baldwin,* 45 Conn. 134; *McChesney* v. *Trenton,* 50 N. J. L. 338, 14 A. 578.

If on the other hand it abolishes two or more offices with substantially the same duties or different duties and bona fide combines the duties under an office with the same name as one of the abolished offices or under a different name or abolishes an office and distributes its duties ■ among other offices for reasons of economy or genuine reorganization, the abolition is permissible. *People ex rel Corrigan* v. *City of Brooklyn,* 149 N. Y. 215, 43 N. E. 554; *People ex rel Wardrop* v. *Adams,* 51 Hun. 583, 4 N. Y. S. 522; *City of Chicago* v. *People,* 114 Ill. App. 145; *Fitzsimmons* v. *O'Neill,* 214 Ill. 494, at page 506, 73 N. E. 797; *People* v. *Scannell,* 48 App. Div. 445, 62 N. Y. S. 930.

The courts are confronted with the principle that the power to create an office being in the legislature, ordinarily the power to abolish it must also reside there. At one and the same time the courts are confronted with another principle that the power to fill an office, at ■■ least if not otherwise provided for in the act creating the office, is executive and under a constitutional provision such as Art. VII, Sec. 10, of our Constitution, absent at least any contrary expression of the legislature, such power lies with the governor. This being the case the legislature has no power summarily to remove the incumbent. Whether the governor has power so to do depends on whether the act makes the incumbent removable at the will of the governor or for cause which in turn may depend on whether the term is by statute a fixed one or indeterminate. In order that the legislature may not circumvent by indirection the governor's power to remove, the courts have

scrutinized the new office set up in the place of the one abolished. If the office is completely abolished and no substitute created nor its duties distributed among other offices, it may be so abolished whatever the motive. *Heath* v. *Salt Lake City,* 16 Utah 374, 52 P. 602; *People ex rel. Moloney* v. *Waring,* 7 App. Div. 204, 40 N. Y. S. 275; *People ex rel Croft* v. *Keating,* 49 App. Div. 124, 63 N. Y. S. 71; *Downey* v. *Hastings,* 160 Ind. 578, 67 N. E. 450; *Com. ex rel. Kelley* v. *Clark,* 327 Pa. 181, 193 A. 634; *Matter of Breckenridge,* 160 N. Y. 103, 54 N. E. 670. *Cf. Evans* v. *Chosen Freeholders of Hudson County,* 53 N. J. L. 585, 22 A. 56; *Newark* v. *Lyon,* 53 N. J. L. 632, 23 A. 274.

The chief characteristics of an office are the functions, duties and powers which appertain to it. If the newly created office has substantially new, different or additional functions, duties or powers, so that it may be said in fact to create an office different from the one abolished, even though it embraces all or some of the duties of the old office it will be considered as an abolition of one office and the creation of a new or different one. The same is true if one office is abolished and its duties, for reasons of economy are given to an existing office or officer. *People* v. *Scannell,* supra; *People ex rel. Traphagen* v. *King,* 13 App. Div. 400, 42 N. Y. S. 961; *People ex rel. Nason* v. *Feitner,* 58 App. Div. 594, 69 N. Y. S. 141.

But if the functions, duties and powers are substantially those of the office abolished, the abolition will be considered merely colorable and the pretended new office be considered in actuality a continuation of the old one. Consequently, where one office is purported to be abolished and a new office purported to be set up the courts will ex- amine the entire transaction for purpose or motive. See *Cusack* v. *Board of Education,* supra; *State ex rel Birdsey* v. *Baldwin,* supra; *McChesney* v. *Trenton,* supra. If the function, duties or powers are substantially the same it will be a strong indication that the purpose was to abolish the officer and not the office, but where offices are

abolished and new ones set up in a general scheme of reorganization, abolition, merger, rearrangement or consolidation genuinely based on reasons of economy or efficiency, the court, if convinced that the purpose was that, will not interfere even though officers in the affected reorganization evolve with some offices whose functions, duties, or powers are substantially like those which were abolished. It is essentially a matter of good faith. See *People ex rel. Dean* v. *Brookfield*, 1 App. Div. 68, 69, 37 N. Y. S. 107; *Matter of Kelly*, 42 App. Div. 283, 59 N. Y. S. 30; *Matter of Kenny*, 52 App. Div. 385, 65 N. Y. S. 204; *Cusack* v. *Board of Education*, supra; reversing 78 App. Div. 470, 79 N. Y. S. 803; *Jones* v. *Willcox*, 80 App. Div. 167, at page 169, 80 N. Y. S. 420; *People ex rel Nason* v. *Feitner*, supra; *Beirne* v. *Jersey City*, 60 N. J. L. 109, 36 A. 778; *Sutherland* v. *Jersey City*, 61 N. J. L. 436, 39 A. 710; *Caulfield* v. *Jersey City*, 63 N. J. L. 148, 43 A. 433; *Phillips* v. *Mayor*, 88 N. Y. 245; *Langdon* v. *Mayor*, 92 N. Y. 427; *State ex rel. Goodnow* v. *Police Com'rs*, 184 Mo. 109, 71 S. W. 215; *Fitzsimmons* v. *O'Neill*, supra.

In our structure of reasoning, we consider another facet of the problem: It is generally admitted that the legislature has the power to shorten the term of an existing office. *Groves* v. *Board of Ed. of Chicago*, 367 Ill. 91, 10 N. E. 2d 403; *Malloy* v. *City of Chicago*, 369 Ill. 97, 15 N. E. 2d 861; 23 Am. & Eng. Ency. of Law, 404, 12 C. J. 1017; 16 C. J. S., Constitutional Law, § 314. But here again it must be done in good faith.

If the terms as shortened result in an opportunity to appoint a new officer and appears to be for that purpose, there is grave doubt as to the validity of the act, for in such case the legislature would be in reality removing the incumbent. Unless the power of removal lay with the legislature it would be exceeding its powers.

If the shortening of the term is required to fit into a bona fide scheme of reorganization in order to consolidate

offices under one officer or set of officers to take over the duties of another office for the sake of economy or efficiency, we can see no constitutional objection. The loss of office by the incumbent is merely an incident and not the objective of the general scheme.

If a term may be shortened for the last above named purpose, there can be no difference between accomplishing the end in that manner and accomplishing it by keeping the term the same but providing that the incumbents are to be replaced by the appointees of another office, either newly created or existing, when it is done in pursuance of a bona fide reorganization statute. Whether the consolidation is accomplished by the abolition of one or more offices and consolidation of their duties with others under a new or existing office, or whether the consolidation of duties is accomplished by keeping the old office extant but requiring the holders of a new or existing office to perform those duties by also placing such holders as incumbents of the old office, and thus displacing the current officers who occupy that office, should make no difference provided it is done in good faith. Good faith is the test. If that is the case it would seem that the State Road Commission could have been abolished and its duties given to the State Engineering Commissioners. Exactly the same result may be accomplished by the obverse method of keeping the offices of the State Road Commissioners intact, removing the incumbents thereof, and giving the Engineering Commissioners their duties by inducting them into the offices of the State Road Commission, granted the Engineering Commission is a really new and bona fide office and granted the Engineering Commissioners are given the offices of the State Road Commission and thus the duties of that office in pursuance of a genuine and bona fide reorganization program. The consolidation of the offices is made by making one person occupy two offices. We arrive at exactly the same end through steps which involve form rather than substance. The touchstone for determining whether this

can or cannot be done is the purpose and good faith for which it is done.

There is still another approach. As said previously, the legislature may shorten a term of office, at least if done for purposes of fitting into a scheme of reorganization, combination or merger of offices. If it can shorten or lengthen the term from one definite period to a shorter or longer definite period and thus sooner unseat an incumbent or prolong his incumbency, if done for the above objective, it would seem that it would accomplish exactly the same purpose by leaving the terms as they are but truncating the incumbencies on the contingencies of the governor acting to replace them by officers who are to take over their duties as officers ex officio of the terms which they vacate in pursuance of a bona fide plan of reorganization. And in all of the above analyses we are assuming that the truncating of the incumbency is by virtue of the force of the legislative act and not by virtue of the act of the governor. The act of the governor in appointing the three engineering commissioners was the act which made operative the force of the legislative act.

The abolition of an office and merging its duties with those of a bona fide new office; the shortening of a term for the purpose of combining two or more existing offices and continuing them under one office or keeping of the term the same but the substitution of one incumbent for another are all ways of reaching the same end or purpose, and if that end is legitimate and done in good faith in pursuance of a genuine plan of reorganization based on supposed reasons of economy or efficiency, we can see no reason why it cannot be done in any of the above three ways that the legislature thinks best.

It must be kept in mind that the reasoning which supports the view that an existing office cannot be abolished and a new one with substantially the same duties set up in its place, or which concludes that a term cannot be short-

ened when the same term is in effect continued under the guise of a new term, rests fundamentally on the composite proposition that while the right to abolish an office is in the power which created it, the right to remove an officer (with certain exceptions) is generally a prerogative of the power which appoints the officer (whether at pleasure or for cause depending upon the statute creating the office) and therefore the legislature cannot use its power to create or abolish in such a way as to encroach on the power to remove. But where the power to create or abolish is rightfully used for legislative purposes, the fact that it incidentally results in the loss of office can make no difference.

To summarize: The right to create or abolish offices and the right to shorten terms is only limited by the condition that it must not be used for the purposes of removing an officer. If it is legitimately used for purposes of reorganization, combination or merger, it is within the legislative powers and purposes and no reason exists for curtailing such use of power even though incidentally an officer may be removed from his office by it. Likewise where an office is not abolished nor its term shortened but the incumbency truncated and present incumbent removed and another substituted for him merely as incidental to an exercise of the paramount legislative power legitimately to create or abolish offices as part of a bona fide plan or reorganization, the same principle applies. If the offices of the State Road Commission had been abolished and all the powers, rights and duties of the State Road Commission had been transferred to the State Engineering Commission, there could have been no complaint if in fact the Engineering Commission was a different office to be tested by determining whether the duties are substantially different in quality or volume. The ability of the legislature to reorganize or combine or merge offices or transfer the duties from one office to another or amalgamate duties under one officer or combine offices under one officer must remain as flexible

as possible up to the point of actually using that power for the purpose of getting rid of incumbents. The legislature should be halted only where it is plain that it was using its powers for the purpose of usurping or circumventing the constitutional power of another who had in such case the only right of removal. The method adopted by the Legislature in this case served to avoid certain practical difficulties in legislative draftsmanship and the necessity of gathering from the acts pertaining to the Road Commission, certain provisions which would necessarily pertain to the Engineering Commission after consolidation.

If this case involved the removal of State Road Commissioners by the executive, there is a basis for the conclusion that the terms of the State Road Commission being fixed, the incumbents could not be so removed except for cause. There is authority to that effect. But in this case their removal results primarily by force of the legislative act. The appointments of the Governor to the office of the Engineering Commission automatically by force of the Act work a termination of the then existing incumbencies of the State Road Commission, and such termination, if brought about by a bona fide reorganization, does not infringe on executive power.

It must be assumed that the reorganization attempted by the legislature is bona fide if enough appears on the statute books from which it can be inferred that the duties of the State Engineering Commission are substantially different or more comprehensive than those of the State Road Commission.

"Where there is doubt as to whether there is a substantial change supporting the exercise of the legislative power of abolition, it should be resolved in favor of abolition," *Suermann* v. *Hadley*, 327 Pa. 190, 193 A. 645, 652.

An examination of Chap. 9, First Special Session Laws 1941 reveals that in addition to assuming the offices of the State Road Commission, the State Engineering Commission has supervision and control of the State Engineer as to all duties

not set out in Title 100, R. S. U. 1933. Moreover, "they shall serve as the members of the State Building Commission and perform its duties." Furthermore, "they shall constitute the State Aeronautics Commission and shall receive and consider suggestions from the Engineering Advisory Council." We cannot say on the face of the act that the consolidation and reorganization of all these duties under the State Engineering Commission does not constitute it a substantially new office and that the reorganization was not bona fide.

It is contended that this law under consideration is a private or special law which has decreased the allowances of the incumbents of the State Road Commission to the point of zero and hence is contrary to Art. VI, Sec. 26, subsection 18 of our Constitution. Granting for the purpose of the discussion that the term allowances embraces salaries, we think the contention untenable. No person appointed or elected to office has a contract with the state to be permitted to occupy the office. If *Mayor, etc., of City of Memphis* v. *Woodward*, 12 Heisk., Tenn., 499, 27 Am. Rep. 750, holds to the contrary, it is against the great weight of authority. See cases cited supra and note 27 Am. Rep., page 754. The incumbent of an office is entitled to the emoluments thereof when he has a right to the possession of the office. Emoluments are an incident to right of office. But if the office is abolished or if the incumbencies are properly terminated as we have above held in this case, there is no right to possess the office. This contention then must fail.

It follows from what has been said above that the writ of quo warranto should be quashed and such is the order.

McDONOUGH, J., concurs.

WADE, District Judge (concurring in result).

I concur with the results reached by Justice WOLFE. The law which is determinative of this case is not in dispute. The creation, elimination and abolition of offices are legis-

lative functions. In the performance of such functions the legislature may incidently terminate the unexpired term of an incumbent officer, but the legislature may not purportedly abolish an office, and then recreate the same office by a different name, and thereby terminate the unexpired term of an officer. The creation of officers and their removal from office is an executive function. The courts look to the substance of such legislative acts rather than the name by which such acts are designated. On the other hand, where the legislature makes changes in an office of sufficient moment to sustain a finding of the legislative intent to abolish the office affected and incidentally outs the incumbent, even though it does not expressly abolish the office still such actions are a legislative function and are valid. The court in each case looks to the substance of such acts rather than what they purport to be. The determining factor is whether the change in a governmental office or agency is real and substantial and goes to its basic structure and is not merely colorable.

There is no dispute as to the facts of this case. The Governor recommended the "elimination of scores of boards, commissions, departments, and other official agencies * * * the classification of the state's activities into as few units as possible * * * and that the functions of the state be assigned to newly created departments." The legislature undoubtedly intended to, and thought it was following the Governor's recommendations. Both the Governor and the legislature were conscientiously attempting a comprehensive plan of reorganization of the various governmental agencies, in the interest of efficiency and economy.

So the question is whether in its reorganization the legislature has made such changes in the basic structure of the office of members of the State Road Commission previously held by relators as to evidence an intent to abolish that office, as it then existed.

The legislature by Chap. 9 of the First Special Session Laws of 1941 created the Department of Engineering, plac-

ing it under the Engineering Commission, to be composed of three members to be appointed by the Governor. By Sec. 12, it provided that the Engineering Commission or its members shall perform the functions heretofore performed by the State Road Commission, and that within the Engineering Commission the Utah State Building Board should perform the functions heretofore performed by the Utah State Building Commission.

By Chapter 13 it amended the law relating to the State Road Commission by providing that the members of the Engineering Commission shall serve as members of the State Road Commission; and provided that the terms of office of the heretofore appointed members of the State Road Commission shall terminate when the members of the State Road Commission shall have been appointed and qualified.

By Chapter 4 it amended the law pertaining to the Building Commission by providing that the members of the Engineering Commission shall serve as the Utah State Building Board, and for the termination of the terms of office of the present members upon the appointment and qualification of the members of the Commission of Engineering. Prior to these amendments there had been five members of the Utah State Building Commission appointed by the Governor, who acted without pay except for expenses.

Thus the membership of these two commissions, which had previously consisted of eight persons, was consolidated into one with a membership of only three persons. In order to do this it was absolutely necessary to terminate the terms of office of five persons. In so doing the legislature of necessity evidenced an intention to abolish at least five offices, as they previously existed. From the fact that a new commission was formed to perform all these functions, and all the terms of office of all members of these commissions were expressly terminated, under the facts here existing there was evidenced an intent to abolish all of the offices held by the eight members of these two commissions and

to substitute therefor one commission to exercise the functions which had previously been exercised by both commissions. Thus the function performed was a legislative one, and the termination of relator's terms of office was merely incidental thereto.

LARSON, Justice (dissenting).

I dissent. It is always with considerable reluctance that I take a stand which voids legislative action. But my oath of office imposes upon me the duty above all other considerations of upholding the constitution.

Unlike the legislative or executive officers, the judiciary must disregard all political or personal reasons and interests, and call the cards as it sees them. And since I am unable to reconcile the section of the statute here involved, with the constitution and the legislative powers therein defined, I cannot let any personal feelings or interests have sway, but must dissent from the opinion of the majority of my associates. And since the section of the statute involved in this case, and the opinion of the majority, in my judgment not only contravenes the constitution but does so in a dangerous precedent, "a decent respect for the opinions of mankind impels me to set forth the reasons" for my dissent. I must add one item to the statement of facts set forth by Mr. Justice WOLFE.

On June 16, 1941, Governor Maw wrote and signed a letter to each of the relators, dating them June 30, 1941, and left them at the governor's office with directions to mail or deliver the letters to relators on June 30, 1941. The letters advised the recipients that a question had arisen as to the right of the legislature to terminate an office, and on advice of the attorney general, the governor "this day made the attached Executive Order affecting your term of office." With each letter was enclosed and delivered to relators the following:

"Executive Order

"I, Herbert B. Maw, Governor of the State of Utah, by virtue of the authority vested in my do hereby order that W. D. Hammond be and

he is hereby removed from the office of Road Commissioner and I do hereby declare the said office of Road Commissioner formerly held by W. D. Hammond to be vacant.

"In Testimony Whereof I have hereunto set my hand and caused to be affixed the Great Seal of Utah.

"Dated at the Capitol the 30th day of June, 1941.

"(Signed) Herbert B. Maw
"Governor"

Said order was not attested by the secretary of state nor was the Great Seal of the State of Utah affixed thereto, nor was said order ever entered in the Record of Official Acts in the office of the secretary of state. Governor Herbert B. Maw left the State of Utah on June 22, 1941, and did not return to the state until July 13, 1941, during which period Secretary of State E. E. Monson was by virtue of Sec. 11 of Art. 7 of the State Constitution, acting governor with all the duties and powers of the governor devolved upon him; and during such period he only could exercise the powers of the governor, and was entitled to the salary and emoluments of that office.

Relators, Hammond and Abbott, Democrats, appointed by Governor Blood, with the consent of the Senate, as members of the State Road Commission bring this action in quo warranto against defendants, Maxfield and Evans, Democrats, appointed by Governor Maw, with the consent of the Senate as members of the Engineering Commission, to determine the right to office as members of the State Road Commission for the period from July 1, 1941, and present the following questions for our determination:

1. Can the legislature by a simple declaratory act, that is, simply by enactment of a statute so declaring, terminate the tenure or term in office, or occupancy of an office created by the legislature, of an office holder appointed by the governor with the consent of the senate, for a definite term of years fixed and prescribed by statute, without charges and a hearing or without abolishing the office?

2. If question 1 be answered in the negative, can the governor remove such office holder by simple executive order without charges and a hearing?

3. If question 2 be answered in the affirmative, was the purported removal attempted by the governor in this case effective?

4. If question 1 and 2 be answered in the negative, may the legislature and the governor, concurring and acting conjointly, remove such office holder without charges and hearing, and without abolishing the office?

These questions involve the interpretation or examination and application of Secs. 26 and 27 of Art. 1, Art. V, Secs. 1, 10, 19, and 21 of Art. VI, Secs. 1, 5, 9, and 10 of Art. VII, and Sec. 1 of Art. VIII, of the state constitution. A proper understanding of the matter suggests the necessity for a review of the background and setting out of which this case arises.

The constitution framed and adopted created a government dividing the powers of government into three separate and distinct departments, and providing that no person charged with the exercise of the *powers properly belonging* to one of these departments, shall exercise any *functions* appertaining to either of the others, except in the cases *herein expressly* directed or permitted. (Italics added.) Art. V. By Art. VI, § 1, the *legislative* power is vested in the Legislature of the State of Utah. (Italics added.) Art. VII, Sec. 1, declares that the

"Executive Department shall consist of Governor, Secretary of State, State Auditor, State Treasurer, Attorney General, and Superintendent of Public Instruction * * * [who] shall perform such duties as are prescribed by this Constitution and as may be prescribed by law."

Sec. 5 provides:

"The Governor shall see that the laws are faithfully executed; he shall transact *all executive business* with the officers of the government * * * and may require information in writing from the officers of the Executive Department." (Italics added.)

Sec. 10 vests in the governor the power to appoint all state and district officers whose offices are created by the constitution or by law where some other method of election or appointment is not provided. Art. VIII *vests the judicial power* of the state in the Senate, sitting as a court of impeachment, in a supreme court, in district courts, and other courts as may be established by law.

The attitude and objective of the framers of the constitution is clearly set forth in two resolutions adopted by the convention early in its proceedings. We quote them:

"Resolved that it be the sense of this convention that in providing for the number of public offices and the salaries to be paid therefor, the same to be as few in number and as low in amount as is consistent with the times and the efficiency of the services to be performed."

"Resolved, as the sense of this convention, that the constitution shall contain only the general plan and fundamental principles of the State government *together with such limitations* of power thereof as may be deemed wise and expedient for the preservation of civil, political and religious liberty.

"Resolved further that matters *purely of a legislative character, not intended as necessary limitations of power*, should not be inserted in the constitution, but left to the legislature, acting within its constitutional powers." (Italics added.)

After these declarations of attitude, purpose and objective, the convention wrote into the constitution itself two provisions to govern its application and interpretation. In Art. 1 we read:

"Sec. 26. The provisions of this Constitution are *mandatory and prohibitory*, unless by express words they are declared to be otherwise." (Italics added.)

"Sec. 27. Frequent recurrence to fundamental principles is essential to the security of individual rights and the perpetuity of free government."

We thus have the foundation, both by the resolutions of the convention and the declarations of the constitution itself, for that document's interpretation, and for the declaration that except for the general grant of the three governmental

powers or functions to the separate and distinct departments the constitution is an instrument of limitations and not of grant; that its provisions are to be construed as limitations on governmental powers, both as to the existence of the power and as to the exercise thereof by another department other than the one in which it is vested in the general grants of governmental function. Thus it is mandatory that the legislative function, i. e., the making or enacting of laws, be done by the legislature as the depository of the legisla-power; and it prohibits the exercise or performance of the legislative function by the judicial or the executive departments except to the extent *expressly* assigned to the governor by Sec. 8 of Art. VII relative to the signing or vetoing of bills passed by the legislature. So too the constitution is mandatory that the executive department, as depository of the executive power, shall exercise the executive functions of government and perform the duties of carrying into operation and effect all acts passed by the legislature; it shall transact all executive business and see that the laws are faithfully executed. By this grant of power the constitution prohibits the exercise of these powers by the legislature or the judiciary. Likewise the constitution is a mandate that courts set up by the constitution or by laws pursuant thereto alone shall exercise the judicial function. Do not be confused by the fact that the Senate when sitting as a court of impeachment performs judicial duties. When so sitting it is not as a part of the legislature but as a part of the judiciary, as a court with a specially limited constitutional jurisdiction, under the *express* provisions of Sec. 1 of Art. VIII pursuant to Art. V of the constitution.

However, as the state grew and developed and life and conditions became more complicated, the legislature from time to time created and set up various bodies and commissions, charging each of them with the performance of certain duties and the execution of certain laws and policies declared and enacted by the legislature. Generally such bodies and commissions, having been created and the mem-

bers thereof appointed, became by the law of their creation independent bodies, subject to no supervision or control except that exercised by the legislature in the way of holding the purse strings through its biennial appropriation. And some of the bodies were given independent funds, that is, funds derived from special specified sources and therefore not within the biennial appropriations of the legislature. While most of the duties they performed were executive duties and most of the business they did was executive business, they were for the most part divorced entirely from the supervision or control of the constitutional depository of the executive power of the state, except that small limited control by the governor in the power of appointment of the membership, all of which with one exception was for a definite term of years fixed by the legislature. Thus it came about that much of the executive power of the state was exercised, not by or under the direction of the constitutional depository of executive powers, not by or through officers chosen by, and amenable to the people, but by numerous separate and independent legislatively created offices. Many of the duties and powers of the executive department were thus dissipated and scattered. There was no unified command; no unity of control; no way to regulate or co-ordinate the workings or activities or expenses. There were no brakes or legal limitations on the expansive power of these bodies or of their personnel. The state found itself not with *an* executive department as provided in the constitution but with a hundred odd executive departments.

When the twenty-fourth session of the legislature convened in January, 1941, Governor Herbert B. Maw called the attention of the legislature to these matters and requested it to reorganize the state government as to all these legislatively created commissions and administrative bodies. He pointed out that it had been the past policy of legislatures to *create* new departments and commissions in ways which permitted them to grow and expand without appreciable control either by the executive or the legislature, and

were set up to operate as independent units without proper supervision. He then said:

"As a result of these practices, the state government has grown and expanded until the *original divisions defined in the constitution have increased in numbers* until today, well over a hundred institutions, commissions, divisions, and organizations will petition this legislature in their budget requests for funds with which to carry on their several activities. * * * There are too many administrative divisions of our state government * * * the business of the state is supervised by *so many executives* * * *. The fourth factor which should meet with your disapproval is the independence of each of the departments. * * * *In fact ours is not a state government. Rather it is a government of a hundred separate units.* * * * It is against the principles of sound economy to permit a few commissions and department heads to expend three fourths of all the state's revenues without any adequate legislative and executive control. * * * The faults described above can be corrected through (1) The *elimination* of the scores of boards, commissions, departments and other official agencies created by the past legislatures which now carry on the State's functions * * * (2) the classification of the state's activities into as few units as possible; and (3) the *creation* of an organization to administer each classification. * * * It is recommended that *now existing commissions, boards, and other governments units* created by past legislatures *be dissolved* and that of the *functions of the state be assigned* to the following *newly created departments.* (Enumerating titles) * * * I have submitted this plan of reorganization of the state to you. * * * The state organization should therefore be of such a nature as to *make each department head directly responsible to the governor,* who in turn will be held accountable by the people. * * * In all cases the various commissions should be *responsible to the governor.*" (Italics added.)

Had the legislature followed the recommendations of the governor and *eliminated, dissolved,* and *abolished* all existing boards and commissions—had it even followed the recommendation of the governor to the extent of *abolishing or dissolving* the State Road Commission—this suit would not have arisen. But because the legislature failed to follow the course of reorganization recommended by the governor, and refused to dissolve and abolish the existing boards and commissions, and sought simply to change the personnel— sought to eliminate and abolish the existing office holder,

the existing commissioner, rather than the office or commission—this action resulted and presents to us the questions above set forth for solution and answer.

1. Can the legislature, by a simple declaratory act, terminate the incumbency or term in office of a member of a state commission appointed for a definite term of years, without abolishing the office? In other words, were relators ousted as members of the State Road Commission by virtue of Sec. 36-2-1, R. S. U. 1933, as amended in Chap. 13, Laws of 1941, and by Sec. 3 of that chapter?

Sec. 36-2-1, R. S. U. 1933, provided as far as material here:

"The state road commission shall be composed of three members, appointed by the governor by and with the consent of the senate, whose terms of office shall be six years, beginning on the 1st day of December. Each Commissioner shall hold office until his successor is appointed and qualified. The governor shall appoint a successor to the member of said commission whose term expires on the 1st day of December, 1933, and appointments shall be made so that the term of one member shall expire on the 1st day of December in each odd numbered year."

While some changes were made in the section in 1935 and 1939, the part quoted was not changed or affected. By Chap. 13, Laws of Utah 1941, the legislature amended that part of Sec. 36-2-1, quoted above, to read:

"The state road commission shall be composed of three members. The members of the engineering commission *shall serve as the members of the state road commission* and shall enforce the provisions of law relating to state highways." (Italics added.)

A new section 3 was added, which reads:

"The terms of office of the members of the state road commission *heretofore appointed* shall terminate as and when the members of *the engineering commission* shall have been appointed and shall have qualified." (Italics added.)

These are the only references to the engineering commission in the whole fabric of the law relative to the state roads.

In all cases it is referred to as the "state road commission." In the Laws of 1933, 1935, 1937, 1939, and 1941, the state road commission as to its membership, duties, powers and name is preserved intact with no changes in its powers except in minor details. The duties were comprehensive and have never been substantially changed. We shall not set out the statutory provisions in detail as they ran through the laws from 1933 to date, but they reveal that there were no substantial changes in the duties of the commission or the characteristics of the office, the tenure of office or any other thing that would substantially change the office or its duties. In fact, the defendants frankly admit this when they say in their brief:

"We cannot take issue with the general statement made by the relators, that the state road commission as a body corporate, continues unchanged."

Neither can issue be taken with the statement that the defendants in the discharge of the duties imposed upon the State Road Commission act not as members of the Engineering Commission but as members of the State Road Commission. The fact that they are ex officio members of the State Road Commission does not put the administration of the laws relative to state roads in the hands of the Engineering Commission. *It still leaves everything as theretofore in the State Road Commission, not in the Engineering Commission. It does not provide that the Engineering Commission shall perform the duties of the State Road Commission* but merely makes the same people members of both commissions. It does not abolish or in any substantial way change the State Road Commission except to change its personnel. It is still the same road commission, with simply a new membership.

By Chap. 119, C. L. U. 1909, the State Road Commission was first created. That act provided:

"There is hereby created a State Road Commission, consisting of the Governor of the State, the State Engineer, the State Treasurer,

one member of the faculty of the Agricultural College of Utah selected by the Board of Trustees * * * and one member of the faculty of the University of Utah * * *."

By Chap. 5 of Title 41, C. L. of U. 1917, the State Road Commission was changed to consist of the governor, secretary of state, attorney general, state auditor and state engineer. No one would contend that any act done by such State Road Commission was an act done by the governor as governor. *Perkins* v. *Board of County Com'rs*, 271 Ill. 449, 111 N. E. 580, Ann. Cas. 1917A, 27. The present road commission by its same name may sue and be sued, has a seal, contracts, etc., as the same State Road Commission as before the act of 1941. It must therefore be conceded that the legislature of 1941 did not follow the recommendation of the governor and *eliminate, dissolve, or abolish* the State Road Commission and *assign its duties* to the Engineering Commission, but simply sought by Sec. 3, quoted above, to change the personnel, to oust the existing members of the road commission to create a vacancy so other persons could assume the office of state road commissioner.

Has the legislature constitutional power to do this? Art. V of the constitution reads:

"The powers of the government of the State of Utah shall be divided into three distinct departments, the Legislative, the Executive, and the Judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted."

This sets up the form of government and is limiting and prohibitory. It clearly withholds from the legislative department any executive powers. Art. VI vests in the legislature the full law making power, and only that power, except that pertaining to impeachments and the consent of the senate in appointments to office. It is sometimes loosely said that all power not expressly prohibited is vested in the legislature. This statement is loose and misleading. The

legislative power, the full law making power, except as noted above, is the only power vested in the legislature. While it has an exclusive monopoly in that field, it has no power beyond the limits of constitutional law making. The creation of offices not created by the constitution, specifying the duties and powers thereof, providing the methods of filling the office, the length of term and compensation therefor are proper exercises of legislative power. Those things are essentially legislative functions. So too is the abolition of an office or changes in its duties or compensation. The rights which the legislature may create it may abolish as to the future, but it cannot abolish rights which have already become actual, existent rights, so as to take from one a vested or present right, except as provided in the constitution for eminent domain.

But the execution of the laws, carrying them into effect, enforcing and seeing to it that the duties and obligations imposed by law are observed and performed are not legislative functions. They are in nature and by the express terms of the constitution executive functions. Art. VII—Sec. 5:

"The Governor shall see that the laws are faithfully executed; he shall transact all executive business," etc.

So too appointment to office is an executive function. Of course in creating an office the legislature may provide for the method of filling it; it may at times even provide who should fill the office, as when it creates an office and provides that it shall be filled ex officio, that is, by some other public officer. But here such matter is somewhat moot because the legislature expressly provided that the members of the road commission should be appointed by the governor, thereby in this case clearly making it an executive function. It must of necessity follow that the power of summary removal of an appointive officer, to the extent that it exists at all, is in the appointing power. If such were not the case, there would not be the proper functionary in-

dependence of the three departments of government. To give one department the power of summary removal of the appointees or officers of another department would be to make one department wholly subservient to the will of the other, and might effectually prevent such department from exercising or performing any of its functions. To give the legislature the power of summary removal and control of the governor's appointments on the State Road Commission, the duties of which are mostly executive, would be contrary to the constitution and directly nullify the primary purpose of the governor's re-organization program—that of returning the exercise of the executive powers of the state government to the executive department as provided in the constitution.

It is often stated in the authorities that the legislature can create offices, and the party having the elective or appointive power creates the officer. Neither can abolish what the other has created. The legislature may abolish any office it created even during the term of an existing incumbent. *Prince* v. *Skillin,* 71 Me. 361, 36 Am. St. Rep. 325; *Attorney General* v. *Jochim,* 99 Mich. 358, 58 N. W. 611, 23 L. R. A. 699, 41 Am. St. Rep. 606; *Nichols* v. *MacLean,* 101 N. Y. 526, 5 N. E. 347, 54 Am. Rep. 730; *Booten* v. *Pinson,* 77 W. Va. 412, 89 S. E. 985, L. R. A. 1917A, 1244. Note 25 Am. Dec. 703; *Hall* v. *Wisconsin,* 103 U. S. 5, 26 L. Ed. 302; *State Prison* v. *Day,* 124 N. C. 362, 32 S. E. 748, 46 L. R. A. 295; 22 R. C. L. 579.

"Offices created by the Legislature may be abolished by the legislature. The power that creates can destroy. * * * The term of an office may be shortened, the duties of the office increased, and the compensation lessened by the legislative will." *State ex rel Yancey* v. *Hyde,* 129 Ind. 296, 28 N. E. 186, 188, 13 L. R. A. 79; *Gilbert* v. *Board of Com'rs,* 8 Blackf., Ind., 81. "While the legislature may abolish an office and thereby abrogate the rights and duties of the officer it cannot leave the office standing and abolish the officer." 22 R. C. L. Sec. 295, p. 581. *Malone* v. *Williams,* 118 Tenn. 390, 103 S. W. 798, 121 Am. St. Rep. 1002.

A statute which legislates an officer out of office in the middle of his term, and devolves his duties upon another but does not abolish the office, is unconstitutional. *Acklen v. Thompson*, 122 Tenn. 43, 126 S. W. 730, 135 Am. St. Rep. 851; 22 R. C. L., supra. In *State* v. *Christensen*, 84 Utah 185, 35 P. 2d 775, this court in both prevailing and dissenting opinions discussed this question. The prevailing opinion at page 783 of 35 P. 2d says:

"A more difficult question is presented with respect to the other objections urged against the validity of the act under review. It is said in 46 C. J. 973 that: 'The legislature has no power to create a vacancy in order to evade the constitution or to defeat the will of the people, and, where there is in fact no vacancy, cannot create a vacancy by declaratory enactment. The reasons for which an office will become vacant, however, may in the absence of constitutional inhibition be fixed by the legislature. Thus it may, unless so inhibited, add new causes producing vacancy in office to those already provided in the constitution. A statute declaring a vacancy in an office on the failure of one duly elected thereto to qualify, when applied to an officer not elected to succeed himself, is unconstitutional as contrary to a constitutional provision that the term shall extend until the successor shall be elected and shall qualify.'

"* * * While the lawmaking power may not by declaratory enactment create a vacancy, it may within constitutional limitations add new causes which produce a vacancy."

From the dissenting opinion we also quote:

"The seriousness of the removal of a person from a public office was tersely stated by Chief Justice Cooley of the Michigan Supreme Court in the case of *McGregor* v. *Board of Supervisors of Gladwin County*, 37 Mich. 388.: 'The removal from a public office is a matter of serious consequence, and it is plain that all the facts which would justify it ought properly to be of record, and my brethren think it essential.'

"* * * *The Legislature cannot declare an office vacant*. It may declare what acts, or omissions, or facts may be grounds for a forfeiture or the making of a finding upon facts upon which the courts may decree a forfeiture or a vacancy." (Italics added.)

A somewhat similar situation was before the Supreme Court of Pennsylvania in *Commonwealth ex rel. Smillie* v.

*McElwee,* 327 Pa. 148, 193 A. 628, 633. The legislature created a board for the assessment and revision of taxes to be composed of members appointed by the auditor general. Section 2 of the act read:

"Upon the effective date of this act, the terms of the members of the board of revision of taxes * * * shall cease and terminate and the members appointed by the Auditor General shall take office for the term for which appointed." Act May 28, 1937, P. L. 939.

It was contended that the act did not abolish the office held by incumbents and that the legislature could not remove an appointive officer prior to the expiration of his term without abolishing the office. We quote from the decision of the court:

"The abolition of certain offices is a legislative function but the abolition of officers is not. The act challenged makes no attempt to abolish the Board for the Assessment and Revision of Taxes created by the act of 1931. It leaves the office, *both in name and functions,* undisturbed and unaffected, but it does attempt to replace the incumbents with selections of the auditor general. *As the Legislature did not appoint the incumbents, it cannot remove them. Their titles to office did not come from the Legislature. What under our system of government the Legislature does not create it cannot destroy."* (Italics added.)

If the act now before us be viewed as a legislative removal or termination in office of the members of the State Road Commission, in effect an ousting of them from office, it is a legislative usurpation of power. In placing it upon the statute books the legislature stepped out of its constitutional bounds, and when it does so its acts are of no validity. It is contended that this act was part of a governmental reorganization and that it abolished the office of member of the State Road Commission although it did not abolish the Commission, and as such can be upheld as within the legislative power. Did it abolish the office of member of the State Road Commission? Does it even reflect an intention on the part of the legislature to abolish such office? That such questions must be answered in the negative is so ob-

vious as to stamp incredibility on any contradiction. The act itself, Sec. 36-2-1, of Chap. 13, Laws of Utah, First Special Session 1941, expressly states:

"The state road commission shall be composed of three members,"

the same identical words of the same section since 1933. As the Supreme Court of Pennsylvania said in *Suermann* v. *Hadley*, 327 Pa. 190, 193 A. 645, 648:

"Generally speaking, in analyzing governmental reorganization statutes, or those changing the method, conduct or operation of a municipality, one of its departments or other agency of government, which embody a comprehensive plan or system as they relate to office holders, the difficulty encountered is in *determining whether the change is of sufficient moment to sustain a finding of legislative intent to abolish the offices affected and to oust the incumbents as an incident thereof, or whether the Legislature* merely proposes the removal of incumbents, * * *." (Italics added.)

The power of the legislature with respect to removal of appointive officers can be exercised in three ways: First, where the act of creation of the office attaches to the office a condition of tenure or the right of removal; second, where there is a complete abolishment of the office or a repeal of the act creating it; third, where the legislature sets up a *new comprehensive system* of one of *its agencies, differing so materially from the system it supplants in its power, methods of operation, and functions,* not merely in name or details of powers or functions, *as to make it incompatible with the continued existence* of the prior agency.

The prevailing opinion says:

"If that is the case it would seem that the State Road Commission could have been abolished and its duties given to the State Engineering Commissioners."

Up to that point where that statement is made there is but little in the prevailing opinion with which I disagree. The trouble is that the legislature did not abolish the State Road Commission and give its duties to the Engineering Commis-

sion. It abolished the State Road Commissioners and made the same men who were members of the Engineering Commission, members of the Road Commission. The Engineering Commission does not, and by the law cannot, exercise the powers and perform the duties of the State Road Commission. The Engineering Commission does not even have supervisory power over the Road Commission. No one would contend that the Engineering Commission could lawfully enter into contracts for road building or condemn rights of way, or be subject to suit on a road contract, or enter into a cooperative contract with the United States Bureau of Roads for road construction and maintenance. (It may be noted that the prevailing opinion, up to this point of its discussion is well documented with authorities, but the discussion from there on is without authority except ipse dixit.)

The legislature did not proceed in either of the ways indicated. It sought by a simple declaratory enactment stating the relators' terms of office were terminated to oust them from office, at the same time preserving and maintaining the office under the same old set up, with powers, terms, and emoluments changed in no substantial particulars. I must therefore hold that the legislature was without power by simple declaratory enactment to terminate the term of office of relators, they being appointees of the governor and essentially executive officers or agents. Further reasons why the legislative effort is void will appear in the discussion of the next question.

2. Can the governor by simple executive order remove the relators as members of the State Road Commission without charges being preferred and without a hearing?

The provisions of the constitution relative to appointments and removal from office are contained in Sec. 10 of Art. VI, providing that either house of the legislature with the concurrence of two-thirds of all members elected may *expel a member for cause*. Sec. 19, Art. VI, provides that the governor and *other state and judicial officers*, except justices of the peace, shall be liable to impeachment for high

crimes, misdemeanors, or malfeasance in office, *but only after charges and a trial and conviction as provided.* Sec. 21 declares that "all officers not liable to impeachment shall be removed for any of the offenses specified in this article, *in such manner as may be provided by law."* Art. VII, Sec. 10, authorizes the creation of offices by law. Pursuant to the constitution which vested in the legislature the power to provide a means or method for ousting officers not liable to impeachment, the legislature enacted Sec. 87-2-3, R. S. U. 1933, which section is still in full force and effect. It reads:

"All officers who are or shall be appointed by the Governor alone, or by the governor by and with the consent of the senate, may, for official misconduct, habitual or willful neglect of duty, or for other good and sufficient cause, at any time during the recess of the legislature be removed, and the vacancy filled during such recess by the governor."

Sec. 36-2-1, R. S. U. 1933, in setting up the road commission and providing for appointments for six year terms, provides,

"Any member of the commission may be *removed for cause by the governor."* (Italics added.)

This language was retained in the enactment of 1935 (Chap. 35, L. of U. 1935), and repeated again by the re-enactment in Chap. 46, L. of U. 1939. And the legislature of 1941, in creating the Engineering Commission, whose members by virtue of that act become ex officio the members of the State Road Commission, preserved the same form that "any member of the commission may be removed for cause by the governor." Chap. 9, Laws of Utah, First Special Session 1941. So in creating the commission of finance the legislature provided, "Any member of the commission may be removed for cause by the governor." Chap. 10, L. of U., First Special Session 1941. So too members of the Fish and Game Commission. Chap. 11, First Special Session 1941. The same provision is found in the Commis-

sion of Business Regulation, Chap. 5, First Special Session; the Public Welfare Commission, Chap. 66, Laws of Utah 1941; the Industrial Commission, Chap. 15, First Special Session. Now when it came to the Publicity and Industrial Development Commission, Chap. 75, L. of U. 1941; the Bank Commissioner, Chap. 3, First Special Session; and the Liquor Commission, Chap. 20, First Special Session; the legislature declared that those commissioners held office at the "pleasure of the governor" or could be removed "at the pleasure of the governor."

R. S. U. 1933 provides the governor can remove members of the Industrial Commission for inefficiency, neglect of duty, malfeasance or misfeasance in office, Sec. 42-1-3; Bank Commissioner, removable at the pleasure of the governor, Sec. 7-1-1; Insurance Commissioner, removable only for specified misconduct, Sec. 43-2-6; Public Utilities Commissioners, removable by the governor only on grounds specified, Sec. 76-1-2; Director of Registration—four year term, no provision for removal, Sec. 79-1-2; State Engineer, four year term, no provision for removal, Sec. 100-2-1. It is evident therefrom that the legislature was providing by law for the removal of state officers not subject to impeachment, and very definitely provided by law the method of removal of members of the State Road Commission,—to wit: by the governor for cause. When the legislature has provided a method and grounds of removal that excludes other methods of grounds for removal.

It is argued that just because Sec. 21 of Art. VI provides that the legislature shall provide a manner of removal of officers not subject to impeachment for the causes mentioned in Art. VI does not preclude the legislature from fixing other grounds for removal. We need not consider that question because here the legislature did provide other grounds for removal and *provided the manner in which it should be exercised*: "may be removed *for cause* by the governor." If relators were not removed "for cause" and in the manner contemplated by the constitution and stat-

ute, they were not removed even though it were held that the constitutional provision was not a limitation as to the causes for removal, which we need not decide. That the expression, "removed for cause" used in the statute, means some specific cause other than the "pleasure of the governor," is evident from the acts of the legislature itself. The section vesting removal power generally in the governor, quoted supra, reads "for official misconduct, habitual or willful neglect of duty, or for other good and sufficient cause." Clearly this means a cause incompatible with a faithful discharge of the duties of the office; a cause which is such as to undermine public confidence in the integrity of its officers. So too the fact that some officers are by the statute creating the offices made removable "for cause" while others are removable "at the pleasure of the governor" evidences an intention of the legislature that "for cause" was not to mean "at the Governor's pleasure" or "for political reasons." Note that there is a natural division or line of demarcation between the officers removable for cause and those removable at the pleasure of the governor. The former class, road commission, engineering, finance, fish and game, business regulation and industrial commissions, which have to do with executing definite specific laws and prescribed policies; commissions whose work carries on continually, overlapping from year to year, involving definite types of businesses and detail where efficiency must come from experience, where the legislature has prescribed with reasonable detail what should be done, are protected and made removable only "for cause" thus assuring such public service shall not be disturbed for reasons of political or personal feeling, and assuring some continuity in office by staggered terms. On the other hand, the liquor commission which has to do with regulating and conducting a business directly affecting the health and morals of society and doing active police work, duties and policies which the legislature could not so well prescribe in detail and which could not therefore be kept so well within bounds, it was thought

advisable to give the governor, an officer directly amenable and responsible to the public, a freer power of removal. He could then be held to a more direct responsibility. So too with the Publicity and Industrial Development Commission. It is charged with the responsibilities of "providing opportunities * * * and creating and sponsoring a program of industrial development." Since this body had to largely seek out and create its own duties and the legislature could not well fix its responsibilities or duties, it naturally was put under more close supervision and control of the chief executive, who could be held accountable to the people. Such is also the holding of the authorities.

The words "for cause" in the phrase "removal for cause" mean for reasons which the law and sound public policy recognize as sufficient warrant for removal—that is "legal cause" and not merely a cause which the appointing power in the exercise of discretion may deem sufficient. *State ex rel. Matson* v. *O'Hern.* 104 Mont. 126, 65 P. 2d 619; *State ex rel. Holt* v. *District Court*, 103 Mont. 438, 63 P. 2d 1026, 1028; *Narragansett Racing Ass'n* v. *Kiernan*, 59 R. I. 79, 194 A. 49. The phrase "remove for cause" means some cause concerning the fitness or ability of the incumbent to perform the duty imposed upon him. It means inefficiency, incompetency, or other kindred disqualification. *Street Com'rs of Hagerstown* v. *Williams*, 96 Md. 232, 53 A. 923, 925. Power to remove a person from office for cause means that a reason must exist which is personal to the individual sought to be removed, which the law and sound public opinion will recognize as a good reason for another occupying the place. *In re Nichols*, 57 How. Prac., N. Y., 395, 404; *State ex rel. Eckels* v. *Kansas City*, Mo. App., 257 S. W. 197; *State ex rel. Rawlings* v. *Kansas City*, 213 Mo. App. 349, 250 S. W. 927; *Drake* v. *State*, 53 N. J. L. 23, 20 A. 747.

Defendants argue that the governor's power of removal is inherent and unlimited because he has the appointive power. The argument as made is somewhat ingenious because inconsistent with itself. They first argue that the

legislature has the right of summary removal, and then argue that the right of removal is by its very nature under the constitution inherent in the executive as the appointing power. The only cases cited to uphold the governor's right of summary removal without cause are three Federal cases: *Myers* v. *United States*, 272 U. S. 52, 47 S. Ct. 21, 71 L. Ed. 160; *Humphrey's Ex'r* v. *United States*, 295 U. S. 602, 55 S. Ct. 869, 79 L. Ed. 1611; *Morgan* v. *Tennessee Valley Authority*, 6 Cir., 115 F. 2d 990. Those cases are not very persuasive. That they should not be persuasive should appear clear in view of the number of times this Utah court has spoken on the subject. See *Silvey* v. *Boyle*, 20 Utah 205, 57 P. 880; *People* v. *McAllister*, 10 Utah 357, 37 P. 578; *Pratt* v. *Board*, 15 Utah 1, 49 P. 747; *Heath* v. *Salt Lake City*, 16 Utah 374, 52 P. 602; *Pratt* v. *Swan*, 16 Utah 483, 52 P. 1092. See, also, Mecham on Public Officers, Sec. 445, also the annotations from 99 A. L. R. infra. The latter two are based upon the Myers case. As pointed out in that case the Federal Constitution vests the whole executive power in the president. The state constitution does not vest it wholly in the governor. Sustaining the cited cases decided by this Court, note the well reasoned opinion of *State ex rel. Green* v. *Collison*, 9 W. W. Harr., Del., 245, 197 A. 836, at page 848 wherein it is stated:

"The decisions of the federal courts with respect to the power of the President to effect removals from office ought not to be regarded as controlling, * * * In general, it is to be said that Governors of states do not exercise the arbitrary power accredited to the President. When exercised it is by virtue of specific constitutional provision, or by statute where no limitation of the legislative power exists."

Again, the Federal Constitution contains no provisions like our Sec. 21 of Art. VI, requiring the legislature to provide by law the manner of removal of officers not subject to impeachment. It is a refutation of the absolute power of removal by the governor.

The general rule as manifested in the decisions of state courts as to limitations on the executive power of removal is that while the removal power is in the executive, the legislature, may, because it creates the office, fix limitations upon or provide the causes or conditions upon the exercise of that power. When the legislature created the office of member of the State Road Commission and authorized the governor to fill that office by appointment, it attached thereto three conditions: One, the term of office was for a period of six years; two, removal could only be made by the governor; three, such removal could only be for cause. In *Hanchett* v. *Burbidge*, 59 Utah 127, 202 P. 377, 378, this Court said:

"Unless otherwise provided by law, the power of appointment embraces the power of removal. In the course of the opinion in *Skeen* v. *Browning*, 32 Utah [164], 168, 89 P. [642], 643, the principle is stated as being: 'Moreover, it may be said to be an inherent right of the power that appoints—*creates—the officer* to also have the power to remove him, and, *unless this power in some way is limited* by some statutory provision, it, as a general rule, prevails.' " (Italics added.)

This court said in *Sheriff of Salt Lake County* v. *Board of Commissioners*, 71 Utah 593, 268 P. 783, 784:

"*When the term or tenure of a public officer is not fixed by law,* the general rule is that the power of removal or suspension, unless controlled by statute, is an incident to the power of appointment."

Where it is stated that an officer may be removed for cause, it follows that he may not be removed except for cause. Where removal is for cause, notice and opportunity to be heard are necessary. Where office is held for a definite term, notice and hearing are necessary.

*State ex rel. Nagle* v. *Sullivan,* 98 Mont. 425, 40 P. 2d 995, 998, 99 A. L. R. 321, involved the State Fish and Game Commission. The members were appointed for definite terms. A commission had been appointed by a former governor and some were here attempted to be removed by his successor. The terms of two of the former commissioners

had expired, and the new governor subscribed and filed with the secretary of state a proclamation stating, substantially as here, that the terms of office of the other members were revoked. The opinion says:

"The power to appoint carries with it, as an incident, in the absence of constitutional or statutory restraint, the power to remove (*Touart* v. *State*, 173 Ala. 453, 56 So. 211; *Cameron* v. *Parker*, 2 Okl. 277, 38 P. 14; *Sponogle* v. *Curnow*, 136 Cal. 580, 69 P. 255; *Sanders* v. *Belue*, 78 S. C. 171, 58 S. E. 762), *but provision for appointment for a fixed term constitutes such restraint, and, in the absence of any provision for summary removal, one appointed for a fixed term can be removed only for cause* (23 Am. & Eng. Ency. of Law 437), and cases cited from many jurisdictions.

"This phrase 'for cause,' as used in this connection, means for reasons which the law and sound public policy recognize as sufficient warrant for removal (*Street Commissioners* v. *Williams*, 96 Md. 232, 53 A. 923; *In re Nichols*, 57 How. Prac. N. Y., 395), that is 'legal cause' (*Attorney General* v. *Crowley*, 75 N. H. 393, 74 A. 1055, 139 Am. St. Rep. 725), and not merely a cause which the appointing power, in the exercise of discretion, may deem sufficient (*State* v. *Common Council of City of Duluth*, 53 Minn. 238, 55 N. W. 118, 39 Am. St. Rep. 595). *It follows, inevitably, that when a statute provides for an appointment for a definite term of office, without provision otherwise, or provides for removal 'for cause,' without qualification, removal may be affected only after notice has been given to the officer of the charges made against him and he has been given an opportunity to be heard in his defense.* Mechem's Public Offices & Officers, 287; *Welch* v. *Ware*, 161 Cal. 641, 119 P. 1080; *Abrams* v. *Daugherty*, 60 Cal. App. 297, 212 P. 942; *Carter* v. *Durango*, 16 Colo. 534, 27 P. 1057, 25 Am. St. Rep. 294; *Lynch* v. *Chase*, 55 Kan. 367, 40 P. 666; *State* v. *Smith*, 35 Neb. 13, 52 N. W. 700, 16 L. R. A. 791; *Honey* v. *Graham*, 39 Tex. 1; *Hallgren* v. *Campbell*, 82 Mich. 255, 46 N. W. 381, 9 L. R. A. 408, 21 Am. St. Rep. 557; Willard's Appeal, 4 R. I. 595. The rigorous application of the rule can only be evaded in such cases by an express grant of power to remove at will.

"'It is fixity of tenure that destroys the power of removal at pleasure otherwise incident to the appointing power. * * * The reason of this rule is the evident repugnance between the fixed term and the power of arbitrary removal. The effect of this rule is, that the right to hold during a fixed term can only be overcome by an express grant of power to remove at pleasure.*

"'An inferential authority to remove at pleasure can not be deduced, since the existence of a defined term, ipso facto, negatives such

an inference, and implies a contrary presumption, i. e., that the incumbent shall hold to the end of his term, subject to removal for cause.' *State ex rel. Gallagher* v. *Brown*, 57 Mo. App. [199], 203, expressly adopted by the Supreme Court in *State ex rel.* v. *Maroney*, 191 Mo. [531], 548, 90 S. W. 141; *State* v. *Crandall*, 269 Mo. 44, 190 S. W. 889. While a few cases to the contrary may be found, the foregoing declarations are supported by the overwhelming weight of authority.

"Under this class of statutes, the requirement of notice and hearing cannot be evaded by any subterfuge. Throop, above, 359; *State ex rel.* v. *Board of Police Commissioners*, 88 Mo. 144, affirming 14 Mo. App. 297." (Italics added.)

This Montana case is in 99 A. L. R. 321 and is annotated. While there are general statements in the note which are subject to qualifications under constitutional and statutory provisions like ours, the note contains a quite complete collection of cases and we will therefore refer to the propositions sustained by the cases cited therein.

99 A. L. R. 354 note:
Removable for "cause."
"The circumstance that an officer can only be removed for 'cause' ordinarily gives rise to a strong inference that some sort of a hearing must be accorded him and that he is entitled to reasonable notice thereof."

The note then cites cases from twenty-seven jurisdictions, including Utah, as supporting this point.

99 A. L. R. 358 note:
Removable for specified causes.
"In general, where the causes for which an officer may be removed are specified in the statute or Constitution, notice and hearing are essential."

Cases from thirty jurisdictions supporting this proposition are cited.

99 A. L. R. 363 note:
Officer holding for fixed term.
"In the ordinary case an officer whose tenure of office is for a fixed period cannot be removed without notice and an opportunity to be heard."

The note cites cases from thirty-two jurisdictions, including the State of Utah, supporting this proposition and adds this general comment:

"The basis for the rule is that definiteness of term indicates that the officer is entitled to hold office for the full time for which he was appointed or elected, unless in the meantime removed for substantial cause, the necessity of cause for a removal implying that there shall be a hearing as to the existence of the cause."

99 A. L. R. 382 note:

"However, the authorities in general recognize such a rule, and uphold the implied authority of the appointing power to remove the *officer without notice and hearing, only where his term of office is not a fixed one.*" (Italics added.)

We refer now only to the principles as stated in some of our Utah cases.

*Silvey* v. *Boyle,* 20 Utah 205, 57 P. 880, 881, following the portion of the opinion hereinabove quoted, says:

"This court has frequently held that such an officer can only be removed upon charges preferred against him, and an opportunity given him to be heard in his defense. *People* v. *McAllister,* 10 Utah 357, 37 P. 578; *Pratt* v. *Board,* 15 Utah 1, 49 P. 747; *Heath* v. *Salt Lake City,* 16 Utah 374, 52 P. 602; *Pratt* v. *Swan,* 16 Utah 483, 52 P. 1092. We are therefore of the opinion that the court properly held that the relator was entitled to the emoluments of the office until May 10, 1898, when, as appears to be conceded, the office was finally abolished."

In *People ex rel. Murphy* v. *McAllister,* 10 Utah 357, 37 P. 578, at page 581 this court said:

"It is evident that the discretion here intended is to be exercised after a hearing for cause, as provided in the first part of the section. The legislature has further provided to the same effect in subdivision 87 of section 1755, Comp. Laws Utah 1888, which empowers the council 'to appoint police and watchmen and to define their powers and duties, and to remove all officers of the city for misconduct, and to provide for filling such vacancies as may occur in any elective office, and to create any office that may be deemed necessary for the good government of the city; to regulate and prescribe the powers, duties and compensation of all officers of the city not herein provided for.' Under

this section the council has the right *to remove only for misconduct, and this applies to all officers of the city*." (Italics added.)

So too are the texts:

Mecham on Public Officers, Section 445:

"Where tenure of office is not fixed by law, and no other provision is made for removals, either by the constitution or by statute, it is said to be a sound and necessary rule to consider the power of removal as an incident to the power of appointment.

"But this power of arbitrary removal is to be limited to these circumstances, and if the tenure is fixed by law or if the officer is appointed to hold during the pleasure of some other officer or board than that appointing him, the appointing power cannot arbitrarily remove him."

Section 452: "Authority to remove for cause cannot be construed as an implied authority to remove at pleasure."

Section 454: "Where the appointment or election is made for a definite term or during good behavior, and the removal is to be for cause, it is now clearly established by the great weight of authority that the power of removal cannot, except by clear statutory authority, be exercised without notice and hearing, but that the existence of the cause, for which the power is to be exercised must first be determined after notice has been given to the officer of the charges made against him, and he has been given an opportunity to be heard in his defense."

As to whether the legislature can add causes for removal other than those stated in the constitution we need not decide. Both the constitution and the statute were binding upon the executive and the term of office was definitely provided by law. The removal here attempted without notice and a hearing was a nullity.

The decision therefore that the attempted removal as here done, both by the legislature and by the governor, was a nullity, renders it unnecessary to decide the third and fourth questions. The record discloses that the term of relator, Abbott, has now expired. However, under the statute he holds until his successor is appointed and qualified. Therefore the writ should issue as prayed for.

MOFFAT, Chief Justice (dissenting).

I dissent from the conclusion reached in the main opinion. I concur generally with what is said in Mr. Justice LARSON'S dissenting opinion and the result reached by him. By way of comment on what is said in the prevailing opinion, and what amounts to the crux of the case, it appears that the court is passing upon the "good faith" of the Legislature.

The main opinion agrees that an official's term may not be terminated without abolishing his office; nor may an incumbent be removed from office; but gets the result by "truncating" the term. The only difference is the extent to which the "truncation" is applied. "Truncating" a term of office is another term for cutting it off. A term may be so "truncated" as to end forthwith.

PRATT, Justice, on leave of absence.